UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMEER AL GHUSAIN,<br><br>  Plaintiff,<br><br>  v.<br><br>CALTRAIN, et al.,<br><br>  Defendants. | Case No.  25-cv-09670-JSC<br><br>**ORDER RE: USRS DEFENDANTS'<br>MOTIONS TO DISMISS AND MOTION<br>FOR RULE 11 SANCTIONS**<br><br>Re: Dkt. Nos. 8, 9, 33 |
| US RAIL SYSTEMS, INC. and SCOTT<br>RICHARDS,<br><br>  Counterclaim-Plaintiffs,<br><br>  v.<br><br>AMEER AL GHUSAIN,<br><br>  Counterclaim-Defendant. | |

Plaintiff, proceeding without attorney representation, sues Caltrain; U.S. Rail Systems, Inc. ("USRS"); Sound Transit; Herzog, Inc.; Scott Richards; Emilie Johnson; Phil Gilmour; John Hogan; James Harrison; and William Smith for violations of trademark and other federal and state laws.  (Dkt. No. 1.)[1]  Mr. Richards and USRS ("USRS Defendants") counterclaim for torts, violations of trademark laws, and unfair competition.  (Dkt. No. 10.)  Now pending before the Court are USRS Defendants' motions to dismiss Plaintiff's initial and amended complaints, (Dkt. Nos. 9, 33), and for sanctions, (Dkt. No. 8).  Having carefully considered the parties' submissions,

---

[1] Record citations are to material in the Electronic Case File ("ECF") in Case No. 25-CV-09670-JSC, unless otherwise noted; pinpoint citations are to the ECF-generated page numbers at the top of the document.

United States District Court
Northern District of California

and with the benefit of oral argument on March 19, 2026, the Court GRANTS USRS Defendants' motions to dismiss but DENIES their motion for Rule 11 sanctions.

Specifically, the Court dismisses Plaintiff's Causes of Action 1, 3, 4, 5, 7, 8, 11, 21, and 24 because they involve the same claims asserted in Case No. 24-CV-01863-JSC and are therefore improperly split claims.  Causes of Action 2, 6, 9, and 12 fail because Plaintiff has not plausibly alleged ownership of a valid trademark or copyright.  As to Causes of Action 13, 14, 15, and 16, Plaintiff has not specifically identified the defamatory statements at issue to support his defamation, false light, or constitutional claims.  And, as to Causes of Action 17, 19, and 25, Plaintiff has not alleged all the necessary elements for a tortious interference claim, such as an existing contract or independently wrongful conduct.  Finally, Causes of Action 20 and 22 are not pled with the particularity required for claims sounding in fraud under Federal Rule of Civil Procedure 9(b).

**BACKGROUND**

## I.    COMPLAINT ALLEGATIONS

Plaintiff, a California resident, is "the founder, owner [since at least 2007], and continuous user in commerce [since 2002] of several federally recognized and common-law trademarks," including SENAID®, US RAILWAYS™, AMERICAN RAILWAYS™, US RAIL™, AMERICAN RAIL™, USA RAILWAYS™, AMIDAC™, AUTRAI™, ARAILCO™, QUIKWELD™, and QUIKBOND™.  (Dkt. No. 1 at 7, 12, 25.)  These "trademarks have evolved into nationally and internationally recognized brands," and "have generated millions of dollars in commercial value over time and have become synonymous with America's transition to zero-emission, electrified, and high-speed rail manufacturing."  (*Id.* at 15.)  However, around 2023, Mr. Richards and "other named defendants willfully diverted funds, customers, and business opportunities to their own newly formed companies . . . built on the foundation of [Plaintiff's] stolen intellectual property and goodwill."  (*Id.* at 16.)  "Throughout [his] career, [Plaintiff] ha[s] directed and delivered major rail and infrastructure projects across the United States; [his] last project was the CALTRAIN project where [he] met Mr. Scott Richards on the job in 2023."  (*Id.* at 22.)

2

United States District Court
Northern District of California

Mr. Richards "has been bound to confidentiality, as reflected in [Plaintiff's] agreements with UNITED and he must maintain the confidentiality of all proprietary, sensitive, or non-public information concerning [his] business, operations, finances, clients, vendors, trade secrets, intellectual property, and other data." (*Id.* at 15.) Mr. Richards also "had full knowledge of [Plaintiff's] US RAIL™ trademark at all relevant times," including because Plaintiff informed him "in 2023 in writing and verbally" of his ownership of the trademarks and web domains reflecting them. (*Id.* at 17, 25.) However, Mr. Richards "deliberately formed two related corporate entities—US Rail Systems, Inc. . . . on July 29, 2024, and US Engineering Systems, Inc. . . . on December 19, 2024—for the purpose of continuing his infringing activities and IPs theft under different names." (*Id.*)

When Mr. Richards left work at United, "he unlawfully took, copied, and misappropriated [Plaintiff's] proprietary intellectual properties." (*Id.* at 18.) Later, around November 2024, Plaintiff "executed a written Settlement Agreement with UNITED." (*Id.*) "The Settlement Agreement expressly confirmed and reaffirmed that all [Plaintiff's] intellectual property, trade secrets, technical data, manuals, and related materials originated from [his] work and remained solely [his property], and that neither UNITED ECM nor any of its former officers—including Scott Richards—were authorized to retain, use, or transfer any of those materials in any form." (*Id.*)

On or before July 29, 2024, Mr. Richards and the other defendants "transferred and disguised the origin of [Plaintiff's] valuable intellectual property [] [u]sing artificial intelligence tools and derivative formatting [to] recreate[] and rebrand[] [his] original materials, manuals, and technical procedures in an attempt to conceal their source and falsely claim ownership." (*Id.* at 20.) That day, Mr. Richards and Phil Gilmour also incorporated USRS, Inc. (*Id.*) "[T]hese Defendants used the laundered intellectual properties and infringed trademarks to submit fraudulent bids and proposals to public agencies, including Caltrain and Sound Transit, thereby misrepresenting [his] proprietary technologies as their own." (*Id.*) "Caltrain, Herzog, Sound Transit, John Hogan, and Attorney James Harrison were all aware, as early as 2023, of [Plaintiff's] ownership of these intellectual properties and trademarks, yet knowingly aided and abetted

Defendants USRS, Richards, and Gilmour in concealing the theft and securing public contracts based on [his] misappropriated materials." (*Id.*)

"Every named Defendant in this case has received no fewer than four Cease-and-Desist notices, sent via email, LinkedIn, and certified letters." (*Id.* at 21.) Plaintiff is also "actively pursuing a parallel enforcement and opposition proceeding" before the U.S. Patent and Trademark Office ("USPTO") because Mr. Richards "willfully and fraudulently filed two trademark applications seeking to register [Plaintiff's] protected marks" US RAIL™ and AMERICAN RAIL™, and "falsely declared . . . he was unaware of any other party with rights to these marks." (*Id.* at 27.) Mr. Richards also around April 2, 2025 filed an application for the US RAIL trademark, despite knowing of Plaintiff's ownership of the US RAIL™ and US RAILWAYS™ marks. (*Id.* at 43.) He filed a "second fraudulent trademark application . . . for a substantially similar or derivative mark" on November 3, 2025. (*Id.* at 44.)

As to the US RAIL™, US RAILWAYS™, AMERICAN RAIL™, AMERICAN RAILWAYS™ marks, Plaintiff has owed and used the marks since 2007, has "developed substantial goodwill, recognition, and secondary meaning among customers," and Mr. Richards, Mr. Gilmour, Mr. Johnson, Mr. Smith, and USRS have "willfully," "knowingly, intentionally, and without authorization used the identical designation." (*Id.* at 30-43.) His applications for each of these marks are "currently pending" before the USPTO. (*Id.*)

Caltrain, Sound Transit, Herzog, John Hogan, and James Harrison, Caltrain's attorney, worked with USRS and its employees to "enable[] the unauthorized use of [Plaintiff's] distinctive marks and brand identity in commerce," and "received 4 cease and desist letters but no action was taken." (*Id.* at 46.) Actions including "the unauthorized use of [Plaintiff's] US RAIL™ trademarks, technical procedures, engineering drawings, 25kV AC electrified rail system specifications, operations and maintenance manuals, safety and training manuals, and other confidential materials and trade secrets" "directly enabled and facilitated the unlawful procurement of public transportation contracts, government funding, and commercial recognition" for USRS. (*Id.*)

## II.　PROCEDURAL HISTORY

### A.　Case No. 24-CV-01863-JSC

In March 2024, Plaintiff sued Mr. Richards, USRS, and others without attorney representation.  (Case No. 24-CV-01863-JSC, Dkt. No. 1.)  Upon retaining counsel, he filed an amended complaint.  (Case No. 24-CV-01863-JSC, Dkt. No. 7.)  In addition, after the Court resolved other defendants' motions to dismiss, (Case No. 24-CV-01863-JSC, Dkt. No. 44), Plaintiff filed a second amended complaint against Balfour Beatty Infrastructure, Inc., Peter Webb, Wayne Richardson, Mr. Richards, and USRS, (Case No. 24-CV-01863-JSC, Dkt. No. 74).  Against Mr. Richards, Plaintiff asserted: (1) violations of the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109; (2) violations of the National Transit Systems Security Act ("NTSSA"), 6 U.S.C. § 1142; (3) whistleblower retaliation, Cal. Labor Code § 1102.5; (4) failure to pay overtime wages, Cal. Labor Code §§ 510, 558, 1194, 1197, 1197.1; (5) failure to provide meal periods, Cal. Labor Code §§ 226.7, 512; (6) failure to provide rest periods, Cal. Labor Code §§ 226.7, 512; (7) failure to provide and maintain accurate wage statements under California Labor Code § 226; and (9) defamation.  (*Id.*)  And against Mr. Richards and USRS, Plaintiff asserted: (10) interference with prospective economic relations; (11) misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1839(5); and (12) misappropriation of trade secrets under the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426.  (*Id.*)

The defendants moved to dismiss.  (Case No. 24-CV-01863-JSC, Dkt. Nos. 78, 79.)  The Court granted the motions to dismiss in part; specifically, the Court dismissed Plaintiff's (1) FSRA, (2) NTSSA, (9) defamation, (10) interference with prospective economic relations, (11) DTSA, and (12) CUTSA claims.  (Case No. 24-CV-01863-JSC, Dkt. No. 86.)  The Court granted Plaintiff leave to file an amended complaint by June 26, 2025 and stated the case would otherwise proceed on the remaining claims.  (*Id.*)  Plaintiff did not file an amended complaint.

### B.　Case No. 25-CV-09670-JSC

On November 10, 2025, Plaintiff, proceeding without attorney representation, filed this suit and asserted 25 causes of action, including:

(1) Common law and 15 U.S.C. § 1125(a) trademark infringement (US RAIL™) against Mr. Richards, Mr. Gilmour, Mr. Smith, Mr. Johnson, and USRS;

(2) Common law and 15 U.S.C. § 1125(a) trademark infringement (US RAILWAYS™) against Mr. Richards, Mr. Gilmour, Mr. Smith, Mr. Johnson, and USRS;

(3) Common law and 15 U.S.C. § 1125(a) trademark infringement (AMERICAN RAIL™) against Mr. Richards, Mr. Gilmour, Mr. Smith, Mr. Johnson, and USRS;

(4) Common law and 15 U.S.C. § 1125(a) trademark infringement (AMERICAN RAILWAYS™) against Mr. Richards, Mr. Gilmour, Mr. Smith, Mr. Johnson, and USRS;

(5) Willful and malicious trademark infringement (US RAIL™) against Mr. Richards, Mr. Gilmour, Mr. Smith, Mr. Johnson, and USRS, 15 U.S.C. §§ 1114, 1116, 1117(B)-(C), 1125(A);

(6) Willful and malicious trademark infringement (US RAILWAYS™) against Mr. Richards, Mr. Gilmour, Mr. Smith, Mr. Johnson, and USRS, 15 U.S.C. §§ 1114, 1116, 1117(B)-(C), 1125(A);

(7) Willful and malicious trademark infringement (AMERICAN RAIL™) against Mr. Richards, Mr. Gilmour, Mr. Smith, Mr. Johnson, and USRS, 15 U.S.C. §§ 1114, 1116, 1117(B)-(C), 1125(A);

(8) Willful and malicious trademark infringement (AMERICAN RAILWAYS™) against Mr. Richards, Mr. Gilmour, Mr. Smith, Mr. Johnson, and USRS, 15 U.S.C. §§ 1114, 1116, 1117(B)-(C), 1125(A);

(9) Fraud on the U.S. Patent and Trademark Office against Mr. Richards, 15 U.S.C. §§ 1051(a)(3)(D), 1119, 1120;

(10) Trademark dilution and unfair competition against Caltrain, Sound Transit, Herzog, John Hogan, James Harrison, 15 U.S.C. § 1125(c); Cal. Bus. & Prof. Code § 14247;

(11) Misappropriation of intellectual property and trade secrets against Richards, Gilmour, Johnson, Smith, Herzog, Hogan, USRS, Defend Trade Secrets Act, Cal. Civ. Code § 3426;

(12) Copyright infringement, public humiliation, and willful misuse of copyrighted material against Mr. Richards, Caltrain, Herzog, Mr. Gilmour, Mr. Johnson, Sound Transit, Mr. Hogan, and James Harrison, 17 U.S.C. §§ 101,106, 501; Cal. Civ. Code § 1708.8;

(13) Defamation per se, false light invasion of privacy, and malicious publication of plaintiff's photograph and likeness against Mr. Harrison, Mr. Richards, Mr. Gilmour, Mr. Hogan, Herzog, and Caltrain;

(14) Defamation against Mr. Richards, Mr. Harrison, Mr. Gilmour, Mr. Hogan, Herzog, and Caltrain;

(15) False light and online/cyber defamation against Mr. Richards, Mr. Johnson, Mr. Gilmour, Mr. smith, and USRS;

(16) Civil rights violations against Mr. Richards, Mr. Gilmour, Mr. Johnson, Mr. Smith, Mr. Harrison, Mr. Hogan, Herzog, USRS, and Caltrain, 42 U.S.C. §§ 1983,1985; Cal. Civ. Code § 52.1;

(17) Tortious interference with prospective economic advantage against Mr. Richards, Mr. Gilmour, Mr. Smith, and USRS, Cal. Civ. Code § 1708;

(18) Fraud, procurement fraud, and false statements in public contracting against Caltrain, Herzog, Mr. Harrison and Mr. Hogan, 18 U.S.C. § 1001, 41 U.S.C. § 1703, Cal. Bus. & Prof. Code § 17200;

(19) Intentional interference with existing contractual relations against Mr. Richards, Mr. Gilmour, Mr. Smith, and USRS, Cal. Civ. Code § 1708;

(20) Intentional interference with contractual and prospective business relations against USRS, Mr. Richards, Mr. Gilmour, and Mr. Smith, Cal. Civ. Code § 1708, 15 U.S.C. § 1125(a);

(21) Unfair competition, digital deception, and online impersonation

against USRS, Mr. Richards, Mr. Gilmour, Mr. Smith, and Mr. Johnson, 15 U.S.C. § 1125(a), Cal. Bus. & Prof. Code § 17200, Cal. Civ. Code § 3294;

(22)    Intentional interference with contractual relations, misappropriation, and unfair competition against Mr. Richards, Mr. Gilmour, Mr. Hogan, USRS, Herzog, and Caltrain, 15 U.S.C. § 1125(a), Cal. Bus. & Prof. Code § 17200, Cal. Civ. Code §§ 1708, 3294;

(23)    Trademark dilution, contributory infringement, and unfair competition against Caltrain, Sound Transit, and Herzog, 15 U.S.C. §§ 1125(c), 1125(a); Cal. Bus. & Prof. Code §§ 14247, 17200;

(24)    Fraudulent misrepresentation, unfair competition, and procurement fraud against USRS, Mr. Richards, Mr. Gilmour, Mr. Smith, and Sound Transit, 15 U.S.C. § 1125(a); Cal. Bus. & Prof. Code §§ 17200, 17500; Cal. Civ. Code § 3294; 41 U.S.C. § 1703; and

(25)    Intentional interference with contractual relations, misappropriation, and unfair competition against Mr. Richards, Mr. Gilmour, Mr. Hogan, USRS, and Caltrain, 15 U.S.C. § 1125(a); Cal. Bus. & Prof. Code § 17200; Cal. Civ. Code §§ 1708, 3294;

(Dkt. No. 1 at 30-94.)  The Court related this suit to Case No. 24-CV-01863-JSC.  (Dkt. No. 6.)

On December 11, 2025, USRS Defendants moved for sanctions, (Dkt. No. 8), and to dismiss Plaintiff's complaint under Federal Rules of Civil Procedure 8 and 12(b)(6), (Dkt. No. 9). USRS Defendants also counterclaimed for: (1) intentional interference with contractual relations; (2) intentional interference with prospective business relations; (3)-(4) libel; (5) libel per se; (6) false designation of origin, 15 U.S.C. § 1125(a); (7) common law trademark infringement; (8) common law unfair competition; and (9) unfair competition, Cal. Bus. & Prof. Code § 17200. (Dkt. No. 10 at 9-16.)  Then, USRS Defendants moved for a preliminary injunction.  (Dkt. No. 15.)  On January 2, 2026, Plaintiff filed an amended complaint, (Dkt. No. 20), which USRS Defendants again move to dismiss, (Dkt. No. 23).

## DISCUSSION

### I.    PLAINTIFF'S AMENDED COMPLAINT

Under Federal Rule of Civil Procedure 15, "[a] party may amend its pleading once as a matter of course no later than . . . 21 days after service of a motion under Rule 12(b)."  Fed. R. Civ. P. 15(a)(1)(B).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  "[L]eave to amend shall be freely given when justice so requires," but "the district court may exercise its discretion to deny leave to amend due to . . . futility of amendment."  *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (quotation marks and citations omitted).

United States District Court
Northern District of California

7

USRS Defendants moved to dismiss Plaintiff's initial complaint on December 11, 2025, and Plaintiff did not file an amended complaint until January 2, 2026, more than 21 days after USRS Defendants' motion. So, because Plaintiff did not obtain the Court's leave or Defendants' consent, and because Plaintiff's amended complaint repeats several of the flaws in Plaintiff's initial complaint, the Court STRIKES Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 15(a). However, because USRS Defendants subsequently moved to dismiss Plaintiff's amended complaint, and Plaintiff did not oppose USRS Defendants' motion, the Court considers USRS Defendants' arguments in both motions to dismiss.

## II.     MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must include a "short and plain statement of [each] claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While the Rule 8 pleading standard does not require "detailed factual allegations," "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). On a motion to dismiss, the court "must take all of the factual allegations in the complaint as true." *Id.* However, this presumption does not apply to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* Ultimately, to avoid dismissal, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," in other words, to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (cleaned up). When a plaintiff files a complaint without representation by a lawyer, the Court must "construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (quotation marks and citation omitted).

### A.     Causes of Action 1-8, 11, 13-15, 19-22, and 24-25: Claim Splitting

In their first motion to dismiss, USRS Defendants assert res judicata. However, because in Case No. 24-CV-01863-JSC, the Court dismissed some of Plaintiff's claims with leave to amend, and Plaintiff's remaining claims are still proceeding, there is no final judgment on the merits and res judicata does not apply. (Case No. 24-CV-01863-JSC, Dkt. No. 86.) *See EDS Fin. Servs., Inc. v. Kroop*, No. SA CV-17-1042-DOC (JCGx), 2018 WL 5880077, at *7 (C.D. Cal. Apr. 10, 2018)

United States District Court
Northern District of California

8

("A dismissal with leave to amend is not a final judgment on the merits." (citing *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 690 (9th Cir. 2005))).

However, USRS Defendants' motion to dismiss Plaintiff's amended complaint, which Plaintiff has not opposed, argues doctrines barring claim splitting prevent several of Plaintiff's claims. "Plaintiffs generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879, 886 (9th Cir. 2022) (quotation marks and citation omitted); *see also Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007) (quotation marks and citations omitted), *overruled in part on other grounds by Taylor v. Sturgell*, 553 U.S. 880 (2008) ("[T]he fact that [a] plaintiff was denied leave to amend does not give [him] the right to file a second lawsuit based on the same facts." (quotation marks and citation omitted)).

"To determine when such improper claim-splitting is present, [courts] borrow from the test for claim preclusion." *Mendoza*, 30 F.4th at 886 (quotation marks and citation omitted). Specifically, "the bar of claim-splitting is applicable if the second suit involves (1) the same causes of action as the first; and (2) the same parties or their privies." *Id.* (citation omitted). Ultimately, district courts have "broad discretion to control their dockets" and "may exercise [their] discretion to dismiss a duplicative later-filed action, to stay that action pending resolution of the previously filed action, to enjoin the parties from proceeding with it, or to consolidate both actions." *Adams*, 487 F.3d at 688 (quotation marks and citations omitted).

### 1.    Same Causes of Action

To determine whether the two suits involve the same claim or cause of action, courts consider:

> (1) whether the two suits arise out of the same transactional nucleus of facts;
> (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action;
> (3) whether the two suits involve infringement of the same right; and
> (4) whether substantially the same evidence is presented in the two actions.

*Mpoyo*, 430 F.3d at 987 (citation omitted); *see also Mendoza*, 30 F.4th at 887 (applying the same test to claim-splitting). As to the first element, "[w]hether two events are part of the same

transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *Mpoyo*, 430 F.3d at 987 (quotation marks and citation omitted). This first element is often "outcome determinative," as it "controls and assures the two suits involve the same claim or cause of action." *Id.* at 988. So, "[e]ven where a plaintiff alleges different legal theories, the subsequent claim is barred if it is premised on the same set of facts." *Stowers v. Wells Fargo Bank, N.A.*, No. 3:13-CV-05426-RS, 2014 WL 1245070, at *2 (N.D. Cal. Mar. 25, 2014) (citing *First Pac. Bancorp, Inc. v. Helfer*, 224 F.3d 1117, 1128 (9th Cir. 2000)); *see also Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003) ("Newly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action.").

### a.   Causes of Action 1-8, 21, and 24: Trademark Infringement Claims

Plaintiff's present complaint alleges he owns the US RAIL™ trademark, and Defendants "used the identical designation 'US RAIL' in commerce in connection with substantially identical goods and services," which has caused "loss of business opportunities, diversion of government and private contracts, diminished goodwill, reputational harm, and financial loss." (Dkt. No. 1 at 30-31.) Plaintiff alleges identical facts for the US RAILWAYS, AMERICAN RAIL, and AMERICAN RAILWAYS trademarks. (*Id.* at 31-36.) Plaintiff also contends Defendants' conduct was willful because it was "a calculated, vindictive, and retaliatory act undertaken with malicious intent to cause confusion, damage [his] reputation, and usurp the commercial value [Plaintiff] built." (*Id.* at 37, 38, 40, 42.)

However, in Case No. 24-CV-01863-JSC, Plaintiff similarly alleged "[p]rior to his work at United and Balfour, [he] developed important technical documents bearing his . . . trademarks . . . American Rail™, American Railways™, [and] US RAIL™." (Case No. 24-CV-01863-JSC, Dkt. No. 74 ¶ 101.) And, after Plaintiff was terminated from United, Mr. Richards "used the same documents and manuals and presentation developed by [Plaintiff] to create a new business called US RAIL Systems, without any regards to [Plaintiff's] . . . trademark US Rail™ that is solely owned by [Plaintiff]." (*Id.* ¶ 102.) Mr. Richards then created USRS and used Plaintiff's

10

"trademarks . . . to obtain three contracts in the US, one with CALTRAIN for $1.5 million, one with HERZOG TASI for $1.6 million and one for $500,000 with Dallas Area Rapid Transit (all are former and potential customers of [Plaintiff])." (*Id.* ¶ 103.)  "As a result of this conduct, Defendants have secured rail contracts causing damage to [Plaintiff] in being denied contracts through the bidding process and otherwise denied employment opportunities." (*Id.* ¶¶ 183, 190.)

So, except as to the US RAILWAYS trademark (Causes of Action Two and Six), Plaintiff's present allegations arise out of the "same transactional nucleus of facts" and "could conveniently be tried together" with his prior allegations in Case No. 24-CV-01863-JSC.  *See Mpoyo*, 430 F.3d at 987.  That Plaintiff previously alleged these facts in support of his trade secret misappropriation claims, rather than trademark infringement claims, is unavailing.  *See Stowers*, 2014 WL 1245070, at *2.

Furthermore, Plaintiff's Twenty-First Cause of Action alleges USRS Defendants' unfair competition and online impersonation based on their use of his trademarks on their websites. (Dkt. No. 1 at 81.)  And Plaintiff's Twenty-Fourth Cause of Action alleges USRS Defendants "fraudulently misrepresented themselves . . . by unlawfully using [Plaintiff's] trademarks, branding, and trade identity." (*Id.* at 89.)  However, because Plaintiff's Twenty-First and Twenty-Fourth Causes of Action "involve[s] infringement of the same right," *see Mpoyo*, 430 F.3d at 987, additional evidence of Defendants' infringement does not create distinct claims.  *See Fantasy Inc. v. La Face Recs.*, No. CIV-S-98-0856 DFL DA, 1998 WL 916481, at *4 (E.D. Cal. Nov. 12, 1998) ("[I]ntroduction of new evidence, by itself, does not bar the application of res judicata.") (citing *International Union of Operating Engineers v. Karr*, 994 F.2d 1426, 1430 (9th Cir. 1993)).

So, Plaintiff's First, Third, Fourth, Fifth, Seventh, Eighth, Twenty-First, and Twenty-Fourth Causes of Action involve the same claims as those at issue in Case No. 24-CV-01863-JSC.

    **b.**    **Cause of Action 11: Misappropriation of Intellectual Property and Trade Secrets**

In his Eleventh Cause of Action, Plaintiff alleges Defendants "unlawfully acquired, reproduced, and used [his] confidential and proprietary materials without consent or authorization." (Dkt. No. 1 at 50.)  The allegedly misappropriated information includes:

United States District Court
Northern District of California

Thermochemical™ Aluminothermic Welding Systems; Electric Flash-Butt Welding Machines for zero-emission rail operations; AUTRAI™ Artificial Intelligence Train Control and Safety Software for autonomous high speed trains; Proprietary engineer and client lists in the transit industry and government rail agencies, including current, former, and prospective clients; Confidential bidding templates, pricing structures, and procurement methodologies; Formulas and Excel sheets used to calculate equipment costs and minimum-prevailing-wage rates; Operations and Maintenance (O&M) manuals for electrified train systems, including: O&M of electric trains, traction power, and related subsystems; Welding manuals for track-to-track, grounding, and bonding of railway applications, Apprenticeship-program curricula for rail-power systems (developed with Mission College); Manuals on maintenance of overhead-power systems, transformers, substations, and surge protection; Technical procedures and schematics on short-circuit loops, electromagnetic safety, and induced-current protections; Training materials for railway grounding, safety, and electrified-system operation.

(*Id.*)  However, in Case No. 24-CV-01863-JSC, Plaintiff also alleged Mr. Richards through USRS misappropriated the following information from Plaintiff:

- List of current, former and potential customers.
- Business and professional bidding templates.
- Operations and Maintenance of Electric Trains, and Operations and Maintenance of Equipment related to Electric Trains.
- Welding Manual for tracks to tracks.
- Welding manual for grounding and bonding for railways applications.
- Apprenticeship program for rail power systems, in cooperation with Mission College.
- Maintenance of overhead power systems,
- Power On/Power Off of rail power systems.
- Operations and Maintenance of transformers and supporting power systems,
- Inspection of power substations, electromagnetic power and induced electricity manual.
- Surge and protection of railways power infrastructure.
- Short circuit loops tools and equipment.
- Training manuals for Electric trains, Operations and Maintenance, Grounding, safety and tools related to electrified trains system in the US.
- Business presentations for future CALTRAIN and HERZOG bids, including his resume, qualification, prior experience, past projects.

(Case No. 24-CV-01863-JSC, Dkt. No. 74 ¶ 101.)  Because Plaintiff's claims in both cases depend on Mr. Richards' and USRS's misappropriation of "substantially the same" information, his claims arise from the "same transactional nucleus of facts" and involve the same claims.  *See Mpoyo*, 430 F.3d at 987 (considering "whether substantially the same evidence is presented in the two actions").  So, Plaintiff's Eleventh Cause of Action involves the same claims as those at issue in Case No. 24-CV-01863-JSC.

12

United States District Court
Northern District of California

### c.      Causes of Action 13-15: Defamation and False Light

In his Thirteenth Cause of Action, Plaintiff alleges Defendants circulated his photograph, stated he was a "trespasser," a "criminal," and an "unauthorized person," and directed Caltrain and Herzog employees and others to "call the police if they see [him]." (Dkt. No. 1 at 55.) However, although Plaintiff asserted a defamation claim in Case No. 24-CV-01863-JSC, Plaintiff did not allege facts related to circulating his photograph and directions to Caltrain and Herzog employees. So, Plaintiff's Thirteenth Cause of Action does not involve a claim at issue in Case No. 24-CV-01863-JSC.

As to his Fourteenth Cause of Action, Plaintiff alleges Defendants' false statements including:

> 1. That "Ameer has stolen the gate code";
> 2. That "Ameer is trespassing on the property" or "has entered live train depots illegally";
> 3. That "Ameer has been fired from Caltrain";
> 4. That "Ameer is incompetent," "unqualified," or "struggling with technical documents";
> 5. That I am "a trespasser," "incompetent," "unqualified," or "not allowed on the Caltrain trains"; and
> 6. That I am "a terrorist" or "security threat."

(*Id.* at 62.) However, in Case No. 24-CV-01863-JSC, Plaintiff alleged Defendants' "false statements include: []1. Ameer has stolen the gate code, 2. Ameer is trespassing on the property, 3. Ameer has been fired from CALTRAIN, 4. Ameer has entered live train depot illegally, 5. Ameer is incompetent, 6. Ameer is struggling with technical documents, and other harmful statements." (Case No. 24-CV-01863-JSC, Dkt. No. 74 ¶ 166.) So, at least the statements Plaintiff "has stolen the gate code," "is trespassing on the property," "has entered live train depots illegally," "has been fired from Caltrain," is "incompetent," and is "struggling with technical documents" arise from the same transactional nucleus of facts as his defamation claims in Case No. 24-CV-01863-JSC. However, the statements he is "unqualified," "not allowed on the Caltrain trains," or is "a terrorist" or "security threat" are new factual allegations not present in Case No. 24-CV-01863-JSC.

Plaintiff's Fifteenth Cause of Action broadly alleges Defendants' "defamatory statements concerning Plaintiff, his trademarks, and his proprietary technologies . . . portrayed Plaintiff and

13

his companies in a false and damaging light." (Dkt. No. 1 at 64.) Although Plaintiff does not specifically identify any defamatory statements, to the extent Plaintiff's Fifteenth Cause of Action relies on defamatory statements alleged in Case No. 24-CV-01863-JSC, it involves the same claim.

So, Plaintiff's Thirteenth Cause of Action alleges new facts and therefore does not involve the same claim. However, to the extent Plaintiff's Fourteenth and Fifteenth Causes of Action rely on statements Plaintiff alleged in Case No. 24-CV-01863-JSC, they involve the same claim. Furthermore, although the Court has stricken Plaintiff's amended complaint, Plaintiff's amended complaint added new allegations Defendants made the defamatory statements in September 2025. (Dkt. No. 20 at 71.) If Plaintiff can plausibly allege Defendants' defamatory statements involve a distinct transactional nucleus of facts from the statements in Case No. 24-CV-01863-JSC, such statements may not involve the same claim.

### d.    Causes of Action 19, 20, 22, 25: Tortious Interference

Plaintiff also alleges USRS Defendants' tortious interference with Plaintiff's contract with MAC Products (Nineteenth Cause of Action), Robert Pearsall and the U.S. High-Speed Rail Association ("USHSR") (Twentieth Cause of Action), Mission College and the Santa Clara Valley Transportation Authority ("VTA") (Twenty-Second Cause of Action), and Herzog and Transit America Services, Inc. ("TASI") (Twenty-Fifth Cause of Action). USRS Defendants argue these allegations all arise from the same facts as Plaintiff's earlier claims Defendants misappropriated Plaintiff's trade secrets and intellectual property and as a result "secured rail contracts causing damage to [Plaintiff] in being denied contracts through the bidding process and otherwise denied employment opportunities." (Case No. 24-CV-01863-JSC, Dkt. No. 74 ¶ 183.) However, as to the Nineteenth, Twentieth, and Twenty-Second Causes of Action, drawing inferences in Plaintiff's favor, Plaintiff plausibly alleges distinct interference from that alleged in Case No. 24-CV-01863-JSC, including because Plaintiff previously did not allege Defendants' conduct related to MAC Products, Robert Pearsall, USHSR, Mission College, or VTA.

As to the Twenty-Fifth Cause of Action, however, Plaintiff alleges he developed an apprenticeship program for Herzog's and TASI's implementation and, in summer 2023, expected

14

United States District Court
Northern District of California

a "five-year contractual opportunity with Herzog valued at approximately $1.6 million per year," but Defendants made false statements about Plaintiff which led Herzog and TASI to terminate their relationship with him.  (Dkt. No. 1 at 92.)  In Case No. 24-CV-01863-JSC, Plaintiff alleged he "submitted a bid in July of 2023 for an apprenticeship program to Herzog for a three-year contract in an amount of $309,600 annually," and after Defendants' statements, Plaintiff "did not get the contract despite initial assurances by Herzog."  (Case No. 24-CV-01863-JSC, Dkt. No. 74 ¶¶ 172-173.)  Plaintiff also alleged Defendants used Plaintiff's materials to obtain a contract "with Herzog TASI for $1.6 million."  (*Id.* ¶ 103.)  Because Plaintiff alleges slightly different contract timelines and values, drawing inferences in Plaintiff's favor, Plaintiff's present complaint may allege Defendants' interference with a different contractual opportunity from that at issue in Case No. 24-CV-01863-JSC.  However, to the extent Plaintiff alleges Defendants' interference with the same contractual opportunity, Plaintiff's Twenty-Fifth Cause of Action involves the same claim as that asserted in Case No. 24-CV-01863-JSC.

### 2.    Same Parties or Privies

There is "obviously [] privity" when the "parties in both actions are identical."  *Tahoe-Sierra Pres. Council, Inc.*, 322 F.3d at 1081.  In Case No. 24-CV-01963-JSC, Plaintiff is also the plaintiff, and USRS and Mr. Richards are also defendants.  (Case No. 24-CV-01963-JSC, Dkt. No. 74.)  So, at least as to Plaintiff and USRS Defendants, there is "obviously [] privity."  *Tahoe-Sierra Pres. Council, Inc.*, 322 F.3d at 1081.

\* \* \*

So, drawing all reasonable inferences in Plaintiff's favor, USRS Defendants have shown claim-splitting applies to at least Plaintiff's First, Third, Fourth, Fifth, Seventh, Eighth, Eleventh, Twenty-First, and Twenty-Fourth Causes of Action against USRS Defendants.  So, the Court dismisses these causes of action.  *See Adams*, 487 F.3d at 688.  The Court also dismisses Plaintiff's Fourteenth, Fifteenth, and Twenty-Fifth Causes of Action to the extent they rely on the same facts alleged in Case No. 24-CV-01863-JSC.  However, USRS Defendants have not shown Plaintiff's Second, Sixth, Thirteenth, Nineteenth, Twentieth, and Twenty-Second Causes of Action involve the same factual basis as claims asserted in Case No. 24-CV-01863-JSC.

15

**B.    Causes of Action 2 and 6: Trademark Infringement (US RAILWAYS™)**

"To prevail on its Lanham Act trademark claim, a plaintiff must prove [first] that it has a protectible ownership interest in the mark." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1202-03 (9th Cir. 2012) (cleaned up). To support his allegations of ownership, Plaintiff's amended complaint includes the trademark application for US Railways; however, the application lists American Railways LLC as the trademark owner. (Dkt. No. 20 at 166.) "LLCs are distinct legal entities, separate from their stockholders or members, [and] [t]he acts of a corporation or LLC are deemed independent of the acts of its members." *Abrahim & Sons Enters. v. Equilon Enters., LLC*, 292 F.3d 958, 962 (9th Cir. 2002). So, "[i]n general, . . . members of an LLC lack prudential standing to assert individual claims based on harm to the . . . LLC." *Prime Surgical Affiliates Inc. v. Aetna Health California, Inc.*, No. 8:23-CV-01198-JVS-JDE, 2024 WL 1824993, at *3 (C.D. Cal. Mar. 4, 2024) (citing *PacLink Commc'ns Int'l, Inc. v. Superior Ct.*, 90 Cal. App. 4th 958, 965-66 (2001); *Erlich v. Glasner*, 418 F.2d 226, 228 (9th Cir. 1969)). Because the court need not accept as true allegations contradicted by documents attached to Plaintiff's complaint, Plaintiff does not plausibly allege he—as opposed to American Railways LLC—owns the US RAILWAYS™ trademark. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Because Plaintiff's amended complaint clarifies—and Plaintiff conceded at oral argument—American Railways LLC, rather than Plaintiff, owns the trademark for US RAILWAYS, Plaintiff does not state a claim for infringement of his trademark. So, the Court dismisses Plaintiff's Second and Sixth Causes of Action.

**C.    Cause of Action 9: Trademark Cancellation**

"A party may seek cancellation of a registered trademark on the basis of fraud under 15 U.S.C. § 1064(c) by proving a false representation regarding a material fact, the registrant's knowledge or belief that the representation is false, the intent to induce reliance upon the misrepresentation and reasonable reliance thereon, and damages proximately resulting from the reliance." *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990); *see also U-Haul Int'l Inc. v. Pub. Storage Operating Co.*, No. CV-24-03160-PHX-MTL, 2025 WL 2531546, at *12 (D. Ariz. Sept. 3, 2025) ("A district court may order the cancellation of a trademark registration '[i]n

any action involving a registered mark.'" (quoting 15 U.S.C. § 1119)).

Plaintiff's Ninth Cause of Action alleges Mr. Richards defrauded the USPTO when filing a trademark application for the "US RAIL" mark, as well as an application "for a substantially similar or derivative mark." (Dkt. No. 1 at 43-44.)  However, because Plaintiff does not allege the USPTO approved Mr. Richards' trademark applications, Plaintiff does not plausibly allege there is any registered trademark at issue.  Furthermore, Plaintiff's amended complaint alleges the USPTO refused to register the marks on December 9, 2025, (Dkt. No. 20 at 53), and Plaintiff agreed at oral argument Mr. Richards does not own a US RAIL trademark.  So, because Plaintiff does not plausibly allege the existence of a registered mark, the Court dismisses Plaintiff's Ninth Cause of Action for cancellation of a trademark registration.

### D.    Cause of Action 12: Copyright Infringement

"Before pursuing an infringement claim in court, [] a copyright claimant generally must comply with § 411(a)'s requirement that 'registration of the copyright claim has been made.'" *Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019) (quoting 17 U.S.C. § 411(a)).  So, "[t]o state a copyright claim, the plaintiff must allege that the copyrights at issue are registered or that the plaintiff has applied to register the copyrights at issue." *Epicor Software Corp. v. Alternative Tech. Sols., Inc.*, No. SACV 13-00448-CJC, 2013 WL 2382262, at *3 (C.D. Cal. May 9, 2013) (citing *Cosmetic Idea, Inc. v. IAC/Interactive Corp.*, 606 F.3d 612, 615 (9th Cir. 2010)).

Although Plaintiff alleges he is "the sole copyright owner of an original digital photograph of [himself], . . . which constitutes an original work of authorship protected under the United States Copyright Act," he does not allege he has registered a copyright in the photo.  (Dkt. No. 1 at 53; *see also* Dkt. No. 20 at 61 (amended complaint).)  In opposing USRS Defendants' motion to dismiss, Plaintiff concedes "registration of the subject image has not yet issued," so he "do[es] not oppose dismissal of this claim without prejudice."  (Dkt. No. 13 at 12.)  So, the Court dismisses Plaintiff's Twelfth Cause of Action.

### E.    Causes of Action 13, 14, and 15: Defamation and False Light

In California, "[t]he elements of a defamation claim are (1) a publication that is (2) false,

17

(3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1259 (2017) (cleaned up).  To plead a defamation claim, "[t]he general rule is that the words constituting an alleged libel must be specifically identified, if not pleaded verbatim, in the complaint." *Kahn v. Bower*, 232 Cal. App. 3d 1599, 1612 n.5 (1991).  While the plaintiff need not "state the exact words" of the alleged defamation, he is required to "alleg[e] the substance of the defamatory statement." *Okun v. Superior Ct.*, 29 Cal. 3d 442, 458 (1981).  Furthermore, "[w]hen a false light claim is coupled with a defamation claim, the false light claim is essentially superfluous, and stands or falls on whether it meets the same requirements as the defamation cause of action." *Jackson*, 10 Cal. App. 5th at 1264 (quotation marks and citation omitted).

Plaintiff alleges several defendants "coordinated the posting . . . of [Plaintiff's] copyrighted photograph . . . throughout the Caltrain system" and "uploaded and shared those images across Caltrain's internal portals, . . . where they were mocked, ridiculed, and used to defame [him]." (Dkt. No. 1 at 55; *see also* Dkt. No. 20 at 64 (amended complaint).)  However, Plaintiff's photo and the accompanying statement "Be on the lookout for Ameer Alghusain (See picture above). If this person is seen at any site, please contact SOC. SOC will need to call Transit PD and Samuel Sanchez immediately" does not include a "statement of fact which is false," and therefore does not plausibly support a defamation or false light claim.  (Dkt. No. 1 at 58.)  *See Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1157 (9th Cir. 2021) (quoting *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 27 (2007)).

In addition, Plaintiff alleges Defendants "falsely stated and instructed that [he] was a 'trespasser,' a 'criminal,' and an 'unauthorized person,' and directed Caltrain and Herzog employees, Allied Security officers, and contractors to 'call the police if they see [him]' on any train, station, or facility." (Dkt. No. 1 at 55; *see also* Dkt. No. 20 at 64.)  Plaintiff also alleges:

> Defendants' defamatory materials and statements falsely portrayed and labeled [him] as:
> 1. That "Ameer has stolen the gate code";
> 2. That "Ameer is trespassing on the property" or "has entered live train depots illegally";
> 3. That "Ameer has been fired from Caltrain";
> 4. That "Ameer is incompetent," "unqualified," or "struggling with

18

technical documents";
5. That [he] [is] "a trespasser," "incompetent," "unqualified," or "not allowed on the Caltrain trains"; and
6. That [he] [is] "a terrorist" or "security threat.

(Dkt. No. 1 at 62; *see also* Dkt. No. 20 at 71.)  However, as the Court explained when dismissing Plaintiff's similar defamation claims in Case No. 24-CV-01863-JSC, "Plaintiff has not alleged defamation with sufficient specificity," including because he does not "identify which defendant made which statement" or "specify which statements were made to which individuals/organizations, and in what form."  (Case No. 24-CV-01863-JSC, Dkt. No. 86 at 15.)  Furthermore, because Plaintiff's false light claim relies on the same factual allegations as his defamation claims, the false light claim also fails.  *See Jackson*, 10 Cal. App. 5th at 1264.

So, the Court dismisses Plaintiff's Thirteenth, Fourteenth, and Fifteenth Causes of Action.

### F.      Cause of Action 16: Civil Rights Violations

Plaintiff's Sixteenth Cause of Action asserts civil rights violations under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and the Bane Act, California Civil Code § 52.1.  (Dkt. No. 1 at 65; *see also* Dkt. No. 20 at 75.)

"42 U.S.C. § 1983 creates a cause of action against a person who, acting under color of state law, deprives another of rights guaranteed under the Constitution."  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  "Section 1983 does not create any substantive rights; rather it is the vehicle whereby plaintiffs can challenge actions by government officials."  *Id.*  To state a Section 1983 claim, a plaintiff must allege a government official (1) acted "under color of state law," and (2) "the action resulted in the deprivation of a constitutional right or federal statutory right."  *Id.* (quotation marks and citation omitted).  "In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation."  *Id.*  Therefore, a plaintiff must allege a specific government official's "actions were both the actual and proximate cause" of his injuries.  *See White v. Roper*, 901 F.2d 1501, 1505 (9th Cir. 1990); *see also Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1998) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.").  A plaintiff cannot "hold an officer liable because of his membership in a group without a showing of

United States District Court
Northern District of California

individual participation in the unlawful conduct." *Jones*, 297 F.3d at 935 (citation omitted).

Plaintiff's constitutional claims rely on Defendants' defamatory statements. (Dkt. No. 1 at 67; *see also* Dkt. No. 20 at 77.) However, "[t]o establish a claim for defamation under Section 1983, a plaintiff must first establish defamation under state law." *Flores v. City of Bakersfield*, No. 1:17-CV-1393-JLT, 2019 WL 7038385, at *17 (E.D. Cal. Dec. 20, 2019), *aff'd*, 834 F. App'x 400 (9th Cir. 2021) (citing *Crowe v. Cnty. of San Diego*, 242 F. Supp. 2d 740, 746 (S.D. Cal. 2003) ("Admittedly, to find defendant liable for violation of § 1983 under a defamation-plus theory, the jury must necessarily find that defendant defamed plaintiffs and must necessarily look to state law in determining whether defamation occurred.")). Because, as explained above, Plaintiff has failed to state a claim for defamation under California law, Plaintiff also fails to state a section 1983 claim for constitutional violations based on defamation. In addition, Plaintiff's section 1983 claim fails because he does not identify which individual defendant made each defamatory statement. *See Jones*, 297 F.3d at 934.

Because Plaintiff has not plausibly alleged a constitutional violation under section 1983, his section 1985 and Bane Act claims also fail. *See Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 930 (9th Cir. 2004) (citation omitted) ("[T]o state a claim for conspiracy under § 1985, a plaintiff must first have a cognizable claim under § 1983."); *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1155 (9th Cir. 2022) ("California's Bane Act requires proof of an underlying constitutional violation.").

So, the Court dismisses Plaintiff's Sixteenth Cause of Action.

### G.   Causes of Action 17, 19, and 25: Tortious Interference with Prospective Economic Advantage and Contractual Relations

Plaintiff also asserts tortious interference claims based on Defendants' interactions with Kieran Mountain (Cause of Action 17), MAC Products Inc. (Cause of Action 19), and Herzog and TASI (Cause of Action 25).

The elements of an intentional interference with contractual relations claim are:

(1) the existence of a valid contract between the plaintiff and a third party;
(2) the defendant's knowledge of that contract;
(3) the defendant's intentional acts designed to induce a breach or

United States District Court
Northern District of California

disruption of that contract;
(4) actual breach or disruption of the contractual relationship; and
(5) resulting damage.

*Reeves v. Hanlon*, 33 Cal. 4th 1140, 1148 (2004) (citation omitted).  Furthermore, in the context of an at-will employment contract, a plaintiff must also prove "the defendant engaged in an independently wrongful act—i.e., an act 'proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard' . . . —that induced an at-will employee to leave the plaintiff."  *Id.* at 1152-53 (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003)).

The elements of an intentional interference with prospective economic relations claim are similar but not identical; a plaintiff must allege:

(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff;
(2) the defendant's knowledge of the relationship;
(3) intentional acts on the part of the defendant designed to disrupt the relationship . . .
(4) actual disruption of the relationship; and
(5) economic harm to the plaintiff proximately caused by the acts of the defendant.

*Golden Eagle Land Inv., L.P. v. Rancho Santa Fe Ass'n*, 19 Cal. App. 5th 399, 429-30 (2018) (cleaned up) (citing *Korea Supply Co.*, 29 Cal. 4th at 1153).  However, as to the third element, the disruptive acts "must be wrongful by some independent legal measure, beyond interference."  *Id.* (citing *Korea Supply Co.*, 29 Cal. 4th at 1153).

Plaintiff's Seventeenth Cause of Action alleges Defendants "interfered with [his] prospective business and economic relationship by soliciting, inducing, and persuading Mr. Mountain to decline employment with [him] and to work instead exclusively for USRS," which constituted "an unlawful attempt to appropriate [Plaintiff's] workforce strategy and damage [his] business reputation and growth."  (Dkt. No. 1 at 70; *see also* Dkt. No. 20 at 80.)  However, because the contract at issue was an at-will employment contract, Plaintiff needs to allege some "independently wrongful act . . . proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard" to state an intentional interference with either contractual relations or prospective economic advantage claim.  *See Reeves*, 33 Cal. 4th at 1152-53 (citing *Korea Supply Co.*, 29 Cal. 4th at 1153, 1159).  Plaintiff's conclusory allegation "[t]he

21

interference was accomplished through independently wrongful conduct" is insufficient. (Dkt. No. 20 at 81.) *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). So, the Court dismisses Plaintiff's Seventeenth Cause of Action.

Plaintiff's Nineteenth Cause of Action alleges MAC Products Inc. was Plaintiff's "long-standing and recurring customer" and in 2019 "reaffirmed [their] business relationship through continued sales and cooperative projects, maintaining a valid and existing contractual and economic relationship." (Dkt. No. 1 at 76-77.) However, according to Plaintiff, Defendants' actions "induce[d] MAC Products Inc. to reduce and ultimately sever its business dealings" with Plaintiff. (*Id.* at 77.) Plaintiff does not include facts supporting a plausible inference Defendants disrupted or caused a breach of an existing contract between himself and MAC Products; instead, Plaintiff only alleges he historically contracted with MAC Products, and Defendants' conduct prevented future contracts. Plaintiff's conclusory allegations of a "valid and existing contractual . . . relationship" are insufficient. *See Iqbal*, 556 U.S. at 678. So, the Court dismisses Plaintiff's Nineteenth Cause of Action for intentional interference with contractual relations.

Plaintiff's Twenty-Fifth Cause of Action alleges Defendants' statements to Herzog and TASI led them to "terminate their developing collaboration" with Plaintiff, which involved a "five-year contractual opportunity." (Dkt. No. 1 at 92.) Although Plaintiff alleges he had the opportunity to enter into a contract with Herzog or TASI, he does not plausibly allege Defendants disrupted a valid and existing contract. So, the Court dismisses Plaintiff's Twenty-Fifth Cause of Action for intentional interference with contractual relations.

### H.      Cause of Action 20 and 22: Claims Sounding in Fraud

Under Federal Rule of Civil Procedure 9(b), claims "grounded in fraud" or "sound[ing] in fraud," must be pled with particularity. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (cleaned up). A claim "sound[s] in fraud" if it "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003); *see also id.* at 1103-04 (explaining for claims sounding in fraud "the pleading of that claim as a whole must satisfy the particularity requirement

22

of Rule 9(b)"). Furthermore, "Rule 9(b)'s particularity requirement applies to state-law causes of action" because "the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule." *Id.* at 1103 (cleaned up). So, even if fraud is not a necessary element of a state law cause of action, a plaintiff who alleges a defendant's "unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of that claim," must allege that fraudulent conduct with particularity to satisfy Rule 9(b). *Kearns*, 567 F.3d at 1125.

To determine whether a claim sounding in fraud satisfies Rule 9(b), a district court considers whether the complaint alleges "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018) (cleaned up). Rule 9(b)'s particularity requirement exists in part "to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs." *Kearns*, 567 F.3d at 1125 (cleaned up).

Plaintiff's Twentieth Cause of Action alleges Defendants interfered with Plaintiff's contractual and prospective business relations with Robert Pearsall and USHSR by making "false statements, disparaging, and misleading statements regarding [Plaintiff's] ownership rights, trademarks, and business credibility." (Dkt. No. 1 at 79.) And Plaintiff's Twenty-Second Cause of Action similarly alleges Defendants interfered with his contract with Mission College and VTA by making "false, misleading, and disparaging statements about [his] qualifications, authorization, and ownership of intellectual property, falsely claiming that [he] lacked the rights or credentials to lead the program." (*Id.* at 84.) Both of Plaintiff's claims therefore rely on a "course of fraudulent conduct . . . as the basis of his claim" and his pleadings must satisfy Rule 9(b). *See Kearns*, 567 F.3d at 1125. Because Plaintiff does not specify the false and misleading statements, the individual defendants who made them, when they were made, or what was false or misleading about them, his pleading does not satisfy Rule 9(b). *See WellPoint, Inc.*, 904 F.3d at 677. So, the Court dismisses Plaintiff's Twentieth and Twenty-Second Causes of Action.

23

**I.    Punitive Damages**

California law allows recovery of punitive damages in tort actions "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a).  However, "[c]ourts in this circuit have generally found that 'requests for punitive damages provide no basis for dismissal under Rule 12(b)(6).'" *Brinson v. California*, No. 25-CV-02381-DMR, 2025 WL 1684885, at *4 (N.D. Cal. June 16, 2025) (quoting *Apple, Inc. v. Starr Surplus Lines Ins. Co.*, No. 24-CV-03738-RFL, 2024 WL 4834424, at *1 (N.D. Cal. Nov. 18, 2024) (explaining "[a] prayer for punitive damages is not a standalone cause of action, but a remedy for a viable claim")).  As the Court has granted USRS Defendants' motion to dismiss all the claims against it, it need not consider Plaintiff's entitlement to punitive damages at this time.

## III.    MOTION FOR SANCTIONS

Federal Rule of Civil Procedure 11(c) authorizes a party to move for sanctions based on a violation of Rule 11(b).  *See* Fed. R. Civ. P. 11(c).  In turn, Rule 11(b) provides:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . .

Fed. R. Civ. P. 11(b).  "Rule 11 is an extraordinary remedy, [and] one to be exercised with extreme caution." *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988); *see also Univ. Vill. Music Ctr. v. Seattle Sch. Dist.*, 844 F.2d 793 (Table), 1988 WL 33365, at *2 (9th Cir. Apr. 8, 1988) ("Generally, we are hesitant to impose sanctions against pro se litigants."). However, when Rule 11 has been violated, "[t]he district court has wide discretion in determining the appropriate sanction," *Hudson v. Moore Bus. Forms, Inc.*, 836 F.2d 1156, 1163 (9th Cir. 1987), as long as it is "limited to what suffices to deter repetition of the conduct," Fed. R. Civ. P. 11(c)(4).

USRS Defendants seek Rule 11 sanctions because several of Plaintiff's present claims are

24

the same as Plaintiff's dismissed claims in Case No. 24-CV-01863-JSC, and Plaintiff's "second action is causing [Mr.] Richards severe emotional distress."  (Dkt. No. 8 at 8 (cleaned up).)  But Plaintiff's present claims are not frivolous or presented with an improper purpose merely because the Court dismissed claims involving the same facts in a prior case.  *See Bisson-Dath v. Sony Computer Ent. Am. Inc.*, No. CV-08-1235 SC, 2012 WL 3025402, at *2 (N.D. Cal. July 24, 2012) ("A claim is not frivolous merely because it is unsuccessful.").  Furthermore, at oral argument, Plaintiff, who is proceeding without attorney representation, explained he initiated a new case because his lawyer in Case No. 24-CV-01863-JSC lacked expertise to represent Plaintiff in pursuing his trademark claims.  So, although Plaintiff's claim-splitting is grounds for dismissal, it is not alone good cause for Rule 11 sanctions.

Mr. Richards' emotional distress as a result of Plaintiff's conduct or lawsuits also does not alone justify sanctions.  To the extent Plaintiff has violated the temporary restraining order in Case No. 24-CV-01863-JSC, USRS Defendants can move for sanctions or contempt in that case.  But Mr. Richards' suffering does not show Plaintiff's "improper purpose" or intent to "harass" in filing this lawsuit.  *See* Fed. R. Civ. P. 11(b)(1).

Furthermore, although USRS Defendants seek as a sanction $14,156 in attorney's fees for bringing their motions for sanctions and to dismiss, their only evidence of attorney's fees is Mr. Richards' declaration:

> USRS and I have incurred $8,100 in attorney's fees bringing this motion. We incurred at least $9,506 in attorney's fees moving to dismiss the Second Action Complaint. We anticipate that we will incur at least another $3,900 to file a reply to an opposition in this motion and the motion to dismiss, and another $750 to prepare for and attend the hearing on the motions.

(Dkt. No. 8-1 ¶ 21.)  Even if Rule 11 sanctions were warranted, the Court cannot—absent evidence of hours expended and hourly rates—determine an appropriate award of attorney's fees.

So, the Court denies USRS Defendants' motion for sanctions without prejudice to their later refiling a motion if Plaintiff's claims prove frivolous or presented with an improper purpose.

**CONCLUSION**

For the reasons stated above, the Court GRANTS USRS Defendants' motion to dismiss

25

Plaintiff's claims against them.  Specifically:

- The Court dismisses Causes of Action 1, 3, 4, 5, 7, 8, 11, 21, and 24 without prejudice, but also without leave to amend, because they involve the same claims asserted in Case No. 24-CV-01863-JSC.  The Court also dismisses Causes of Action 14, 15, and 25 without prejudice, but without leave to amend, to the extent they rely on facts asserted in Case No. 24-CV-01863-JSC.  *See Unicolors, Inc. v. Allen Yang,* No. CV-17-4473-MWF (JPRx), 2017 WL 10436063, at *2 (C.D. Cal. Oct. 3, 2017) (dismissing claims based on claim-splitting without leave to amend).

- The Court dismisses Causes of Action 2, 6, 9, and 12 without prejudice, but also without leave to amend, because Plaintiff has conceded he cannot allege the facts necessary to state these claims.  *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) ("[A] district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." (quotation marks and citation omitted)).  If the facts change, Plaintiff may move for leave to amend these claims.  Plaintiff is advised an LLC, such as American Railways LLC, can only appear in court through an attorney, so Plaintiff may not bring suit on American Railways LLC's behalf.  *See D-Beam Ltd. P'ship v. Roller Derby Skates, Inc*., 366 F.3d 972, 973 (9th Cir. 2004) ("It is a longstanding rule that '[c]orporations and other unincorporated associations must appear in court through an attorney.'" (quoting *In re Am. W. Airlines*, 40 F.3d 1058, 1059 (9th Cir. 1994))).

- The Court dismisses Causes of Action 13, 14, 15, 16, 17, 19, 20, 22, and 25 with leave to amend because Plaintiff may allege facts sufficient to plausibly state his claims.  However, for the reasons explained above, Plaintiff may not assert claims involving the same facts as those alleged in Case No. 24-CV-01863-JSC.

Plaintiff's amended complaint, if any, is due **April 17, 2026**.  However, Plaintiff may not add any new defendants or claims without obtaining additional leave from the Court.  The Court also cautions Plaintiff any amended complaint must be stated in a reasonable number of pages.  *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and

United States District Court
Northern District of California

United States District Court
Northern District of California

plain statement of the claim showing that the pleader is entitled to relief."); *see Gibson v. City of Portland*, No. 24-1663, 2026 WL 235118, at *18 (9th Cir. Jan. 29, 2026) ("[T]he district court has inherent authority to control its docket and ensure the prompt resolution of lawsuits, which in some circumstances includes the power to dismiss a complaint for failure to comply with Rule 8(a)(2) and Rule 10(b)." (quotation marks and citations omitted)).

The Court also DENIES USRS Defendants' motion for sanctions.

In addition, as discussed at the hearing, Plaintiff shall serve the unserved defendants on or before **April 3, 2026**.  The Court sets an initial case management conference for **May 6, 2026** at 2:00 p.m. via Zoom video.  A joint case management conference is due one week in advance.

Finally, as Plaintiff is proceeding without counsel, the Court directs his attention to the Handbook for Pro Se Litigants, which is available along with further information for the parties on the Court's website located at.  Plaintiff may also contact the Legal Help Center via telephone: (415)-782-8982, or email: fedpro@sfbar.org for free assistance regarding his claims.

This Order disposes of Docket Nos. 8, 9, and 33.

**IT IS SO ORDERED.**

Dated: March 30, 2026

JACQUELINE SCOTT CORLEY
United States District Judge

27