UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMEER AL GHUSAIN,<br><br>                Plaintiff,<br><br>        v.<br><br>CALTRAIN, et al.,<br><br>                Defendants. | Case No.  25-cv-09670-JSC<br><br>**ORDER RE: USRS'S MOTION FOR A PRELMINARY INJUNCTION AND PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS**<br><br>Re: Dkt. Nos. 15, 23 |
| US RAIL SYSTEMS, INC. and SCOTT RICHARDS,<br><br>                Counterclaim-Plaintiffs,<br><br>        v.<br><br>AMEER AL GHUSAIN,<br><br>                Counterclaim-Defendant. | |

Plaintiff, proceeding without attorney representation, sues Caltrain; U.S. Rail Systems, Inc. ("USRS"); Sound Transit; Herzog, Inc. ("Herzog"); Scott Richards; Emilie Johnson; Phil Gilmour; John Hogan; James Harrison; and William Smith for violations of trademark and other federal and state laws.  (Dkt. No. 1.)[1]  Mr. Richards and USRS ("USRS Defendants") counterclaim for tortious interference, libel, violations of trademark laws, and unfair competition. (Dkt. No. 10.)  Now pending before the Court are USRS's motion for a preliminary injunction, (Dkt. No. 15), and Plaintiff's motion to dismiss USRS Defendants' counterclaims, (Dkt. No. 23). Having carefully considered the parties' submissions, and with the benefit of oral argument on

---

[1] Record citations are to material in the Electronic Case File ("ECF") in Case No. 25-CV-09670-JSC, unless otherwise noted; pinpoint citations are to the ECF-generated page numbers at the top of the document.

March 19, 2026, the Court GRANTS USRS's motion for a preliminary injunction and GRANTS in part and DENIES in part Plaintiff's motion to dismiss USRS Defendants' counterclaims. USRS has shown it is likely to succeed on the merits of its intentional interference with contract claim, it is likely to suffer irreparable harm absent an injunction, and the balance of equities and public interest weighs in its favor. However, USRS Defendants fail to state a claim as to intentional interference with prospective economic advantage to the extent their claim relies on Plaintiff's outreach to Alyssa Walker and Robert Pearsall.

**BACKGROUND**

## I.    RELEVANT FACTS[2]

USRS President Scott Richards was previously the president of United Construction Management Corporation ("United"), which worked on Balfour Beatty Infrastructure, Inc.'s electrification project with Caltrain ("the Project"). (Dkt. No. 10 ¶ 6; Dkt. No. 15-1 ¶¶ 1-2.) In June 2023, United retained Plaintiff as an "electrical engineering consultant" to "review technical data in written submittals prepared by other Balfour or United workers for errors and either sign off on the submittals or resubmit to the drafter for revisions." (Dkt. No. 10 ¶ 7; Dkt. No. 15-1 ¶ 3.) On August 2, 2023, Plaintiff "went out into the field unbeknownst to United," and when he returned, "a supervisor told him he was not to perform tasks outside of his submittal review without getting approval from a United supervisor." (Dkt. No. 10 ¶ 8; Dkt. No. 15-1 ¶ 5.) The next day, Plaintiff went out into the field again "in direct disobedience of United's instructions," and "used a confidential access code gained during his prior employment at Caltrain to enter a restricted electrified rail yard (CEMOF)." (Dkt. No. 10 ¶ 9; Dkt. No. 15-1 ¶ 5.) "This restricted area was 'live' and required proper safety gear and a Caltrain representative to always be with visitors." (Dkt. No. 10 ¶ 9; Dkt. No. 15-1 ¶ 5.) On August 7, 2023, United terminated its contract with Plaintiff "because of his refusal to comply with United's express instructions given the day before not [to] go into the field without authorization, poor judgment, and improper use of confidential information." (Dkt. No. 10 ¶ 10; Dkt. No. 15-1 ¶ 6.)

---

[2] USRS Defendants' countercomplaint allegations, (Dkt. No. 10), mirror Mr. Richards' declaration in support of the motion for a preliminary injunction, (Dkt. No. 15-1).

On March 26, 2024, Plaintiff filed *Al Ghusain v. Webb et al.*, Case No. 3:24-CV-01863-JSC (the "First Action"), alleging, among other things, Mr. Richards "defamed him and presented Caltrain [Plaintiff's] confidential technical knowledge as his own." (Dkt. No. 10 ¶ 11; Dkt. No. 15-1 ¶ 7.)  Mr. Richards subsequently left United; formed USRS on July 29, 2024; filed a Statement of Information indicating he was USRS's sole officer and director; and contracted with Caltrain and TASI to work on the Project. (Dkt. No. 10 ¶ 13; Dkt. No. 15-1 ¶ 9; Dkt. No. 15-1 at 10, 12.)

On August 26, 2024, Plaintiff emailed seven Caltrain officials:

> Please be advised that defendant Mr. Scott Richards who owns 50% of the shares of United that won this contract has elected to dissolve the company United, he has taken cash from corporate bank accounts and is planning to leave the country after he declares bankruptcy. This contract must be stopped immediately before Tasi or Caltrain get financial harm (sic) and carry on liabilities and fraudulent documents that I produced for United and BBII.

(Dkt. No. 10 ¶ 14; Dkt. No. 15-1 ¶ 10.)  Plaintiff also sent LinkedIn messages to USRS employee Kieran Mountain, warning him to stop working on the Project, otherwise he would add Mountain as a defendant in the First Action, for which damages exceed "$35 million annually," and which Mr. Mountain "can't afford."  (Dkt. No. 10 ¶ 15; Dkt. No. 15-1 ¶ 11; Dkt. No. 15-1 at 15-19.) Plaintiff also "threatened Mountain saying that Richards was misusing the name 'US Rail' because it was a trademark of American Railways," which Plaintiff owned, and demanded Mr. Mountain have Mr. Richards send Plaintiff $360,000, otherwise Plaintiff would sue Mr. Mountain. (Dkt. No. 10 ¶ 16; Dkt. No. 15-1 ¶ 12; Dkt. No. 15-1 at 15-19.)  Mr. Mountain subsequently resigned from USRS, which caused USRS to lose more than $400,000 because he was not replaced on the Project.  (Dkt. No. 10 ¶ 17; Dkt. No. 15-1 ¶ 14.)

On January 23, 2025, Plaintiff formed American Railways.  (Dkt. No. 10 ¶ 18; Dkt. No. 15-1 ¶ 15; Dkt. No. 15-1 at 21.)  A little over a week later, on February 4, 2025, Plaintiff emailed USRS's business partner Mac Products claiming USRS "fraudulently obtained [a] $20 million contract" using Plaintiff's and American Railways' "valuable IPs," "highly confidential[,] and highly technical documents."  (Dkt. No. 10 ¶ 19; Dkt. No. 15-1 ¶ 16; Dkt. No. 15-1 at 23-24.) Plaintiff told Mac Products it was "equally liable for millions of dollars in Damages assisting Scott

United States District Court
Northern District of California

3

Richards and CALTRAIN thru infringement of [his] knowledge and experience in the rail industry.'" (Dkt. No. 10 ¶ 19; Dkt. No. 15-1 ¶ 16; Dkt. No. 15-1 at 23.)  And Plaintiff demanded Mac Products "refrain from using [his] name US Rail and American Rail and all [his] IPs immediately," but he nevertheless has "no other option but to be preparing invoices for $1.8 million for all [its] misuse of [his] IPs and copyright and trade secrets." (Dkt. No. 10 ¶ 19; Dkt. No. 15-1 ¶ 16; Dkt. No. 15-1 at 23-24.)

Then, on October 15, 2025, Senaid Electrify sent an email to one of USRS's business contacts, Robert Pearsall, a director with US High Speed Rail.  (Dkt. No. 10 ¶ 25; Dkt. No. 15-1 ¶ 22; Dkt. No. 15-1 at 49-52.)  Although the email is signed "Senaid Electrify," USRS Defendants believe Plaintiff sent it given his statements he was the sole owner of American Railways and the address for Senaid Electrify matched American Railways' address.  (Dkt. No. 10 ¶ 26; Dkt. No. 15-1 ¶ 23; Dkt. No. 15-1 at 21.)  The email states USRS "has secured multiple multi-million-dollar contracts using the unauthorized mark 'US Rail Systems,'" and Senaid Electrify intends "to bring these contracts and related transactions to the attention of the courts of proper jurisdiction—whether state, federal, or USPTO proceedings—for judicial review and appropriate relief." (Dkt. No. 10 ¶ 25; Dkt. No. 15-1 ¶ 22; Dkt. No. 15-1 at 49-50.)

A week or so later, Senaid Electrify also sent an email to Sound Transit, "a company with whom USRS has a contract to perform engineering and other consulting services." (Dkt. No. 10 ¶ 27; Dkt. No. 15-1 ¶ 24; Dkt. No. 15-1 at 54-58.)  The email accused Sound Transit of "supporting or enabling" USRS, which had "repeatedly and willfully infringed on the registered and common-law trademarks, copyrighted materials, and brand identity of American Railways LLC, including its subsidiaries US Rail™ and SENAID® Railways." (Dkt. No. 10 ¶ 27; Dkt. No. 15-1 ¶ 24; Dkt. No. 15-1 at 54.)  The email also referenced concerns "aris[ing] from representations made by US Rail Systems Inc. claiming itself as a national 'Authority' with affiliation with DART, BART, Sound Transit, New York MTA, and the California High-Speed Rail Authority." (Dkt. No. 10 ¶ 27; Dkt. No. 15-1 ¶ 24; Dkt. No. 15-1 at 55.)  And, the email states: "[W]e have already submitted an opposition to the attempted registration of 'US Rail Systems' based on our longstanding ownership and use of these marks since 2009, in both U.S. and international commerce." (Dkt.

4

No. 10 ¶ 28; Dkt. No. 15-1 at 57.)  Finally, the email threatened to "proceed with full legal action if the infringing conduct is not immediately addressed and remedied."  (Dkt. No. 10 ¶ 29; Dkt. No. 15-1 ¶ 24; Dkt. No. 15-1 at 58.)  In response, Sound Transit informed USRS it would not pay a $400,000 invoice while it investigated Plaintiff's allegation, which "caused a serious disruption to USRS's business, including USRS being unable to pay employees" and "having to take out loans to cover its cash shortfall," and USRS's employees' anxiety about their jobs and unwanted contact from Plaintiff.  (Dkt. No. 10 ¶ 30; Dkt. No. 15-1 ¶¶ 25.)

On October 29, 2025, Plaintiff created a LinkedIn page for US Railways claiming it held the trademark for US Rail and "US Rail Systems," with a link to USRS's LinkedIn page.  (Dkt. No. 10 ¶ 31; Dkt. No. 15-1 ¶ 26; Dkt. No. 15-1 at 60.)  Plaintiff also repeatedly asked to connect on LinkedIn with Alyssa Walker, a new USRS employee.  (Dkt. No. 10 ¶ 32; Dkt. No. 15-1 ¶ 27.)

On November 5, 2025, the Court issued a temporary restraining order against Plaintiff in the First Action enjoining him "from contacting USRS's employees, contractors and clients asserting USRS stole or is improperly using his or his company's intellectual property including the trademarks US Rail or US Rail Systems."  (Dkt. No. 10 ¶ 33; Dkt. No. 15-1 ¶ 28.)  On November 10, 2025, Plaintiff filed a complaint in this case "naming USRS's clients and employees as defendants."  (Dkt. No. 10 ¶ 34; Dkt. No. 15-1 ¶ 29.)  The defendants in this case include:

(1) Caltrain, which has a $1.6 million contract with USRS;

(2) Sound Transit, which has a $50 million support service contract with USRS;

(3) Herzog, Inc. / TASI, which has a $1.5 million contract with USRS;

(4) Emilie Johnson, who is Scott Richards' sister and USRS's HR manager;

(5) Phil Gilmour, USRS chief operating officer;

(6) William Smith, USRS's vice president;

(7) John Hogan, Caltrain's former chief operating officer; and

(8) James Harrison, Caltrain's general counsel.

(Dkt. No. 10 ¶ 35; Dkt. No. 15-1 ¶ 30.)  After Mr. Richards and USRS notified Plaintiff they would be filing a motion for sanctions, Plaintiff forwarded the email to USRS clients, including

Caltrain, DART, and Sound Transit; raised a "Federal Railroad Safety Alert" claiming Mr. Richards "may be struggling or facing suicidal thoughts"; and urging recipients to direct Mr. Richards to "employee-assistance programs" or "suicide-prevention resources" "for the safety of the public, the workforce, and Mr. Richards himself." (Dkt. No. 10 ¶ 36; Dkt. No. 15-2 ¶¶ 2-3; Dkt. No. 15-2 at 5, 7-10.)

In addition, on November 19, 2025, Plaintiff emailed USRS's attorneys "threatening to name Karen [Seto] as a defendant in a RICO action he would be filing with this court unless she 'withdr[e]w or resign[ed] as agent' for USRS, as she was the designated agent for service of process for USRS." (Dkt. No. 10 ¶ 37; Dkt. No. 15-2 ¶ 4; Dkt. No. 15-2 at 12-15.) On December 11, 2025, Plaintiff again emailed USRS's attorneys "threatening action based on 'significant and undisclosed conflict-of-interest issues' as they are married and are both attorneys for Richards and USRS, and demanding recusal or disqualification." (Dkt. No. 10 ¶ 37; Dkt. No. 15-2 ¶ 5; Dkt. No. 15-2 at 17-19.)

## II.    PROCEDURAL HISTORY

Plaintiff filed this suit on November 10, 2025 and asserted 25 causes of action against Defendants including trademark infringement, tort, and federal and state statutory claims. (Dkt. No. 1 at 30-94.) The Court related Plaintiff's new case to the First Action, Case No. 24-CV-1863-JSC. (Dkt. No. 6.)

USRS Defendants subsequently moved for sanctions, (Dkt. No. 8), and to dismiss Plaintiff's complaint under Federal Rules of Civil Procedure 8 and 12(b)(6), (Dkt. No. 9). USRS Defendants also counterclaimed for: (1) intentional interference with contractual relations; (2) intentional interference with prospective business relations; (3)-(4) libel; (5) libel per se; (6) false designation of origin, 15 U.S.C. § 1125(a); (7) common law trademark infringement; (8) common law unfair competition; and (9) unfair competition under the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200. (Dkt. No. 10 at 9-16.) USRS Defendants then moved for a preliminary injunction based on their counterclaims. (Dkt. No. 15.) Plaintiff also filed an amended complaint, (Dkt. No. 20), which USRS Defendants again moved to dismiss, (Dkt. No. 23).

United States District Court
Northern District of California

**DISCUSSION**

**III.    MOTION FOR A PRELIMINARY INJUNCTION**

To obtain a preliminary injunction, a plaintiff must establish: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted); *see also King v. Saddleback Jr. Coll. Dist.*, 425 F.2d 426, 428 n.2 (9th Cir. 1970) (explaining a likelihood of success on the merits means a "reasonable probability" of success).  "A preliminary injunction may also be appropriate if a movant raises 'serious questions going to the merits' and the 'balance of hardships . . . tips sharply towards' it, as long as the second and third *Winter* factors are satisfied."  *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (citation omitted).  Ultimately, however, "[a] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Apartment Ass'n of Los Angeles Cnty., Inc. v. City of Los Angeles*, 10 F.4th 905, 911 (9th Cir. 2021) (cleaned up).

USRS seeks a preliminary injunction enjoining Plaintiff from:

> a. Contacting or attempting to contact USRS employees for any purpose; and
> b. Contacting or attempting to contact USRS contractors/clients, Caltrain, Sound Transit, Dallas Area Rapid Transit, US High Speed Rail Association, Transit Services Inc., Jacobs, HNTB, Herzog Inc., Amtrak, and Siemens, for the purpose of asserting or implying that USRS stole, misappropriated, or is improperly using his or his company's intellectual property, including the trademark "US Rail" or "US Rail Systems."

(Dkt. No. 15-3 at 2.)

**A.    Likelihood of Success on the Merits**

USRS asserts it is likely to succeed on the merits of its intentional interference with contract claim, its intentional interference with prospective economic advantage claim, and its California Unfair Competition Law ("UCL") claim.

The elements of an intentional interference with contractual relations claim are:

> (1) the existence of a valid contract between the plaintiff and a third

7

United States District Court
Northern District of California

party;
(2) the defendant's knowledge of that contract;
(3) the defendant's intentional acts designed to induce a breach or disruption of that contract;
(4) actual breach or disruption of the contractual relationship; and
(5) resulting damage.

*Reeves v. Hanlon*, 33 Cal. 4th 1140, 1148 (2004) (citation omitted). As to the third element, "the plaintiff need not prove that a defendant acted with the primary purpose of disrupting the contract, but must show the defendant's knowledge that the interference was certain or substantially certain to occur as a result of his or her action." *Id.* (citation omitted).

However, "a defendant is not subject to liability for intentional interference if the interference consists merely of extending a job offer that induces an employee to terminate his or her at-will employment." *Id.* at 1153. So, when a plaintiff asserts an intentional interference with contractual relations claim based on the defendant's interference with an at-will employment contract, a plaintiff must also plead "the defendant engaged in an independently wrongful act— i.e., an act 'proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard' . . . that induced an at-will employee to leave the plaintiff." *Id.* at 1152-53 (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003)) (adopting "independently wrongful act" element from intentional interference with prospective economic advantage claim).

USRS is likely to succeed on the merits of its intentional interference with contractual relations claims as to Sound Transit. USRS has a "contract to perform engineering and other consulting services" with Sound Transit, and Plaintiff likely emailed Sound Transit about its "supporting or enabling of" USRS. (Dkt. No. 15-1 ¶ 24; Dkt. No. 15-1 at 54.) The email asked Sound Transit to cease and desist using the US Rail and other trademarks and "misrepresent[ing] [an] affiliation with . . . US Rail," and threatened to sue Sound Transit. (Dkt. No. 15-1 at 56-57.) And after Plaintiff's email, Sound Transit informed USRS it would not pay a $400,000 invoice while investigating his allegation, which "caused a serious disruption to USRS's business, including USRS being unable to pay employees and having to take out loans to cover its cash shortfall." (Dkt. No. 15-1 ¶ 25.) So, USRS can likely show Plaintiff knew about Sound Transit's contract with USRS, and there are at least serious questions regarding Plaintiff's knowledge his

8

outreach would interfere with—and did interfere with and cause damage to—that contract.

Mr. Mountain had an employment contract with USRS, Plaintiff reached out to him on LinkedIn because Mr. Mountain's name was "on US Rail systems" for work on the Project, and after Plaintiff's communications with Mr. Mountain, Mr. Mountain resigned from USRS, which led USRS to lose more than $400,000. (Dkt. No. 15-1 ¶¶ 11, 14; Dkt. No. 15-1 at 15.) So, USRS can likely show Plaintiff knew about Mr. Mountain's contract with USRS, and there are at least serious questions regarding Plaintiff's knowledge his outreach would interfere—and did interfere—with that contract. Furthermore, even given the parties' dispute about the timing of Mr. Mountain's resignation, USRS has at least raised serious questions regarding whether Plaintiff's outreach caused Mr. Mountain's resignation and therefore damaged USRS.

However, because USRS agrees it had an at-will employment contract with Mr. Mountain, USRS must also show Plaintiff's intentional acts to disrupt Mr. Mountain's employment contract were independently wrongful, and not merely the extension of a competing job offer which induced Mr. Mountain to end his employment at USRS. *See Korea Supply Co.*, 29 Cal. 4th at 1153. In response, USRS provides evidence Plaintiff messaged Mr. Mountain on LinkedIn: "[P]lease have Scott [Richards] wire $360,000 immediately for misuse of our trademark, or, a third lawsuit will be filed against you personally," and "we estimate the damages to be in excess of $35 million annually and you can't afford this." (Dkt. No. 15-1 at 17-18.) Plaintiff's threat to sue Mr. Mountain unless he received payment from Mr. Richards at least creates a serious question whether his conduct constituted attempted extortion, which would suffice as an independently wrongful act, especially since there appears no basis to sue Mr. Mountain for USRS's alleged trademark infringement. *See Monex Deposit Co. v. Gilliam*, 680 F. Supp. 2d 1148, 1163 (C.D. Cal. 2010) ("As the Court has determined that [the plaintiff] is entitled to summary judgment on its attempted extortion claim against [the defendant], the independently wrongful requirement is satisfied with respect to him."); *see also Fuhrman v. California Satellite Sys.*, 179 Cal. App. 3d 408, 426 (1986), *overruled on other grounds by Silberg v. Anderson*, 50 Cal. 3d 205 (1990) (recognizing as extortion or duress, "a cause of action for the recovery of money obtained by the wrongful threat of criminal or civil prosecution," i.e., "moneys obtained by duress"). USRS has

therefore shown at least serious questions going to the merits of USRS's claim for Plaintiff's intentional interference with Mr. Mountain's contract.

So, as to its intentional interference with contract claims, USRS has shown its likelihood of success on the merits as to Plaintiff's interference with the Sound Transit contract, and at least serious questions going to the merits as to Plaintiff's interference with Mr. Mountain's contract. The Court therefore need not address USRS's likelihood of success on its intentional inference with prospective economic advantage and UCL claims.

### B.    Irreparable Harm

A plaintiff must also show "he is likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20; *see also id.* at 21 ("[P]laintiffs must demonstrate a likelihood of irreparable injury—not just a possibility—in order to obtain preliminary relief."). "An irreparable harm is one that cannot be redressed by a legal or equitable remedy following trial." *Optinrealbig.com, LLC v. Ironport Sys., Inc.*, 323 F. Supp. 2d 1037, 1050 (N.D. Cal. 2004) (citing *Pub. Util. Comm'n v. FERC*, 814 F.2d 560, 562 (9th Cir. 1987)).

Substantial harm to or loss of business can constitute irreparable harm. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975); *see also Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985) ("The threat of being driven out of business is sufficient to establish irreparable harm." (citation omitted)). Furthermore, "[d]amage to a business' goodwill is typically an irreparable injury because it is difficult to calculate." *Optinrealbig.com, LLC*, 323 F. Supp. 2d at 1050 (citing *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)).

USRS argues Plaintiff's outreach to its customers makes it likely they will refuse to pay or work with USRS moving forward. After Plaintiff's prior outreach, Sound Transit refused to timely pay USRS $400,000, which prevented USRS from paying its employees. Given Plaintiff's continued outreach to USRS's contractors and clients, it is likely similar incidents may occur in the future and lead to substantial and irreparable harm to USRS's business. *See also Kryzhanovskiy v. Amazon.com Servs., Inc.*, No. 2:21-CV-01292-DAD-BAM, 2022 WL 2345677, at *5 (E.D. Cal. June 29, 2022) ("Because 'lost wages or delays in compensation threaten or

United States District Court
Northern District of California

impair [plaintiff's] ability to meet basic needs, such harms are irreparable.'" (citation omitted)).

USRS also argues Plaintiff's outreach to its employees will cause it to lose important employees, which will make it difficult for USRS to complete work for its clients. For example, as to Mr. Mountain, "the loss of a valuable employee caused USRS to lose more than $400,000 as he was not replaced on the Project." (Dkt. No. 15 at 12.) Given Plaintiff's continued attempted outreach to USRS's employees, Plaintiff is likely to—absent an injunction—cause irreparable harm to USRS's employee recruitment and retention, and by extension to USRS's client relationships. *See Rent-A-Center, Inc.*, 944 F.2d at 603 ([I]ntangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm." (citation omitted)).

Plaintiff's contention "lawful trademark enforcement cannot supply irreparable harm" is unavailing given USRS seeks to enjoin Plaintiff from contacting its contractors, clients, and employees, and Plaintiff may still assert his trademark infringement claims in court. (Dkt. No. 19 at 9.) So, USRS has also shown likely irreparable harm warranting an injunction limiting Plaintiff's outreach to its contractors, clients, and employees.

### C.    Balance of Equities

To determine whether the balance of equities weighs in favor of an injunction, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (quotation marks and citation omitted); *see also Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) (noting the balance of hardships favors the movant when the injunction will simply prevent violations of law).

For the reasons explained above, USRS will suffer irreparable harm to its business because there is a likely risk its customer relations worsen or it loses important employees in the absence of an injunction. In response, Plaintiff contends a preliminary injunction would prevent him "from enforcing US RAIL trademark rights." (Dkt. No. 19 at 7.) Plaintiff's argument is unavailing because nothing in USRS's proposed injunction prevents Plaintiff from proceeding with his trademark infringement case in court. So, the balance of equities weighs sharply in favor of an injunction.

11

### D.    Public Interest

Because USRS has shown a likelihood of success on its tortious interference with contract claims, the public interest weighs in favor of an injunction "to enforce contracts and prevent unlawful interference with them." *Google LLC v. Point Fin., Inc.*, No. 5:25-CV-04033-BLF, 2025 WL 2381732, at *7 (N.D. Cal. Aug. 15, 2025) (holding "the final *Winter* factor favors granting the injunction as to [the plaintiff's] tortious interference claim"); *see also Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1078 (N.D. Cal. 2016) ("Similarly, the public interest is served when defendant is asked to do no more than abide by trade laws and the obligations of contractual agreements."). Although Plaintiff contends the public interest in trademark enforcement weights against granting the injunction, as explained above, nothing in the injunction prevents Plaintiff from enforcing his trademarks in court, rather than by contacting USRS's contractors, clients, and employees.

### D.    Bond

Plaintiff also requests a $3.5 million bond based on the annual harm he suffers from Defendants' trademark misuse. (Dkt. No. 19 at 13.) However, the party who will be affected by the injunction bears the burden of "present[ing] evidence that a bond is needed, so that the district court is afforded an opportunity to exercise its discretion in setting the amount of the bond." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003). "The bond amount may be zero if there is no evidence that the party will suffer damages from the injunction." *Id.* at 882 (citation omitted). Because Plaintiff presents no evidence supporting his claim he will suffer damages from the preliminary injunction, much less $3.5 million in damages each year, the Court denies his request for a bond.

\* \* \*

So, as to its intentional interference with contract claims based on Sound Transit and similar contractors or clients, USRS has shown it is likely to succeed on the merits of an intentional inference with contractual relations claim, it is likely to suffer irreparable harm absent an injunction, and the balance of equities and the public interest weighs in its favor. In addition, as to its intentional interference with contract claims based on Mr. Mountain and other USRS

12

employees, USRS has shown at least serious questions going to the merits of the claims, its likelihood of suffering irreparable harm, and the balance of equities and the public interest "tip[] sharply towards it." *See Disney Enters., Inc.*, 869 F.3d at 856 (cleaned up). So, USRS is entitled to a preliminary injunction.

## IV.    MOTION TO DISMISS USRS DEFENDANTS' COUNTERCLAIMS

Plaintiff moves to dismiss USRS Defendants' counterclaims (A) as waived under Federal Rule of Civil Procedure 13(a); (B) for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6); and (C) as barred by California's Anti-SLAPP statute.

### A.    Waiver of Compulsory Counterclaims (Rule 13(a))

Federal Rule of Civil Procedure 13(a) requires a counterclaimant:

> [T]o state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim:
> (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
> (B) does not require adding another party over whom the court cannot acquire jurisdiction.

Fed. R. Civ. P. 13(a)(1). "Rule 13(a) [therefore] bars the assertion of claims in a new action that should have been brought as compulsory counterclaims in a prior action." *FutureLogic, Inc. v. Transact Techs. Inc.*, No. CV 05-03754 MMM (PJWx), 2006 WL 8432105, at *3 (C.D. Cal. Jan. 20, 2006). Courts should consider whether the "essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir. 1987) (quotation marks and citation omitted).

Plaintiff argues USRS Defendants' counterclaims should have been brought as compulsory counterclaims in the First Action. However, the First Action concerned Defendants' alleged misappropriation of Plaintiff's intellectual property, trade secrets, and other confidential information in 2023. (Case No. 24-CV-01863-JSC, Dkt. No. 74.) USRS Defendants' counterclaims, in contrast, concern Plaintiff's outreach to USRS's employees, contractors, and clients in 2024 and 2025. Furthermore, USRS Defendants' claims are primarily based on conduct occurring after Plaintiff's April 18, 2025 amended complaint in the First Action. (*Id.*) *See*

13

*Kuschner v. Nationwide Credit, Inc.*, 256 F.R.D. 684, 689 (E.D. Cal. 2009) (holding counterclaims are not forfeited as compulsory counterclaims even if arising from the same transaction or occurrence if it "did not mature until" after the pleading was filed) (citing Fed. R. Civ. P. 13(e)). Furthermore, in light of Plaintiff's choice to file a new case against USRS Defendants, rather than amending his complaint against USRS Defendants in Case No. 24-CV-01863-JSC, "considerations of judicial economy and fairness" do not justify dismissing USRS Defendants' counterclaims. *See Pochiro*, 827 F.2d at 1249.

So, Rule 13(a) does not warrant dismissing USRS Defendants' counterclaims as compulsory counterclaims in Case No. 24-CV-01863-JSC.

### B. Failure to State a Claim (Rule 12(b)(6))

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While the Rule 8 pleading standard does not require "detailed factual allegations," "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). On a motion to dismiss, the court "must take all of the factual allegations in the complaint as true." *Id.* However, this presumption does not apply to "[t]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* Ultimately, to avoid dismissal, a complaint must "contain sufficient factual matter" to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (explaining a complaint must allege "enough facts to state a claim to relief that is plausible on its face").

### 1. Causes of Action One and Two: Intentional Interference

As explained above, USRS has plausibly alleged the elements of an intentional inference with contractual relations claim based on Plaintiff's outreach to Sound Transit and to Mr. Mountain. *See Reeves*, 33 Cal. 4th at 1148.

USRS also asserts an intentional interference with prospective economic advantage claim based on USRS's relationships with Mr. Mountain, Ms. Walker, and Mr. Pearsall. An intentional interference with prospective economic advantage claim requires:

United States District Court
Northern District of California

(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff;
(2) the defendant's knowledge of the relationship;
(3) intentional acts on the part of the defendant designed to disrupt the relationship;
(4) actual disruption of the relationship; and
(5) economic harm to the plaintiff proximately caused by the acts of the defendant.

*Korea Supply Co.*, 29 Cal. 4th at 1153. "To establish a claim for interference with prospective economic advantage[], a plaintiff must [also] plead that the defendant engaged in an independently wrongful act." *Id.* at 1158. As to Mr. Mountain, USRS plausibly alleges Plaintiff knew Mr. Mountain worked for USRS, and his outreach to Mr. Mountain caused him to resign, and therefore caused USRS to lose more than $400,000 it would have gained from his work on the Project. (Dkt. No. 10 ¶ 17.) Furthermore, as explained above, Defendant has plausibly alleged Plaintiff's attempted extortion and therefore independently wrongful conduct by threatening to sue Mr. Mountain unless he stopped work on the Project or had Mr. Richards send him $360,000. (*Id.* ¶¶ 15-16.) However, as to Ms. Walker and Mr. Pearsall, USRS does not include any facts supporting a plausible inference Plaintiff disrupted its relationship with them or caused damages; its conclusory allegation "[b]ecause of [Plaintiff's] intentional interference and false allegations, USRS has been damaged in an amount to be proven at trial" is insufficient. (Dkt. No. 10 ¶ 48.)

So, the Court grants Plaintiff's motion to dismiss USRS's intentional interference with prospective economic advantage claim as to Ms. Walker and Mr. Pearsall, but otherwise denies Plaintiff's motion to dismiss the intentional interference claims.

### 2.      Causes of Action Three, Four, and Five: Libel and Libel Per Se

To state a libel claim, a plaintiff must allege the defendant made "a false statement of fact." *Okun v. Superior Court*, 29 Cal. 3d 442, 450, 459 (1981) (explaining statements of opinion are not actionable). USRS Defendants' counterclaims allege specific false statements of fact made by Plaintiff, including that USRS "fraudulently obtained a $20 million contract" and that Mr. Richards was "facing suicidal thoughts." (Dkt. No. 10 ¶¶ 19, 25, 27, 36, 51, 58, 66.) In light of USRS Defendants' allegations, Plaintiff's conclusory argument the libel claims fail because "they are not" "adequately pleaded" is unavailing. (Dkt. No. 23 at 9.)

United States District Court
Northern District of California

### 3.    Causes of Action Six and Seven: False Designation of Origin and Common Law Trademark Infringement

Plaintiff moves to dismiss these claims because he is "the senior common-law trademark owner." (Dkt. No. 23 at 10.) However, upon a motion to dismiss, the court "must take all of the factual allegations in the complaint as true" and draw inferences in the pleading party's favor. *See Ashcroft*, 556 U.S. at 678. So, given USRS's allegations it is the "owner of common law rights in the US Rail Systems mark" and "has also continuously used" the mark, (Dkt. No. 10 ¶¶ 74, 80), the Court will not dismiss causes of action six and seven based on Plaintiff's contrary factual assertions.

### 4.    Causes of Action Eight and Nine: Unfair Competition

Plaintiff moves to dismiss USRS's eighth and ninth causes of action because they "are entirely derivative of their trademark and interference theories," and "those underlying claims fail as a matter of law." (Dkt. No. 23 at 11.) Because Plaintiff has not shown USRS Defendants' failure to state a claim as to its intentional interference with contract or as to its trademark claims, Plaintiff's argument is unavailing.

### C.    Justification and Privilege Defenses

Plaintiff argues USRS Defendants' interference and defamation counterclaims fail because "[t]rademark enforcement, cease-and-desist communications, safety alerts, and communications made in anticipation of litigation are legally justified conduct." (Dkt. No. 23 at 9.) However, "plaintiffs ordinarily need not 'plead on the subject of an anticipated affirmative defense.'" *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) (citation omitted). So, "ordinarily, affirmative defenses . . . may not be raised on a motion to dismiss." *U.S. Commodity Futures Trading Comm. v. Monex Credit Co.*, 931 F.3d 966, 972 (9th Cir. 2019) (cleaned up). "When an affirmative defense is obvious on the face of a complaint, however, a defendant can raise that defense in a motion to dismiss." *Rivera*, 735 F.3d at 902 (citations omitted). Because USRS Defendants' counterclaim alleges USRS, rather than Plaintiff, owns the trademarks at issue, Plaintiff's affirmative defense based on trademark enforcement is not "obvious on the face of [the] complaint" and therefore not grounds for dismissal. *Id.*

So, the Court grants Plaintiff's motion to dismiss USRS Defendants' intentional interference

with prospective economic advantage claim as to Ms. Walker and Mr. Pearsall.  The Court otherwise denies Plaintiff's motion to dismiss USRS Defendants' countercomplaint for failure to state a claim.

### D.  California's Anti-SLAPP Statute

California's anti-Strategic Lawsuit Against Public Participation ("anti-SLAPP") statute, Cal. Civ. P. Code § 425.16, responds to "concern about civil actions aimed at private citizens to deter or punish them for exercising their political or legal rights." *Mindys Cosms., Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010) (quotation marks and citation omitted).  The statute provides "a party may file a motion to strike a cause of action against it if the complaint 'aris[es] from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." *Id.* (quoting Cal. Civ. P. Code § 425.16(b)(1)).

"[D]efendants sued in federal courts can bring anti-SLAPP motions to strike state law claims." *Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109-10 (9th Cir. 2003)).  However, because "granting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment," a district court may "defer[] consideration" of a motion to strike "under the anti-SLAPP statute pending receipt of [the plaintiff's] first amended complaint." *Id.* So, when a court "finds deficiencies in the claims as pleaded, it may defer consideration of the anti-SLAPP motion pending the filing of an amended complaint." *Freeman v. Wells Fargo & Co.*, No. 23-CV-00476-DMR, 2023 WL 4828678, at *6 (N.D. Cal. July 26, 2023) (citing *Verizon Delaware, Inc.*, 377 F.3d at 1091).

Because the Court is dismissing certain of USRS Defendants' counterclaims and granting USRS Defendants leave to file an amended countercomplaint, the Court defers ruling on Plaintiff's anti-SLAPP motion to strike pending the filing of an amended countercomplaint.  The Court also notes because Plaintiff is proceeding without attorney representation, he will not be able to recover attorney's fees should he ultimately prevail on his anti-SLAPP motion. *See Kay v. Ehrler*, 499 U.S. 432, 435 (1991) ("The Circuits are in agreement, however, on the proposition

17

that a *pro se* litigant who is *not* a lawyer is *not* entitled to attorney's fees.").

**CONCLUSION**

For the reasons stated above, the Court GRANTS USRS's motion for a preliminary injunction and enjoins Plaintiff from:

> a. Contacting or attempting to contact USRS employees for any purpose unrelated to a genuine offer of employment; and
>
> b. Contacting or attempting to contact USRS contractors/clients, Caltrain, Sound Transit, Dallas Area Rapid Transit, US High Speed Rail Association, Transit Services Inc., Jacobs, HNTB, Herzog Inc., Amtrak, and Siemens, for the purpose of asserting or implying that USRS stole, misappropriated, or is improperly using his or his company's intellectual property, including the trademark "US Rail" or "US Rail Systems."

The Court also GRANTS in part and DENIES in part Plaintiff's motion to dismiss USRS Defendants' counterclaims. Specifically, the Court GRANTS Plaintiff's motion to dismiss USRS Defendants' intentional interference with prospective economic advantage claim to the extent it relies on Plaintiff's interactions with Ms. Walker and Mr. Pearsall. The Court otherwise DENIES Plaintiff's motion. USRS Defendants may file an amended countercomplaint against Plaintiff; however, they may not add new counter-defendants or claims without first seeking the Court's leave. USRS Defendants' deadline to file an amended countercomplaint is **April 17, 2026**. If USRS Defendants do not file an amended countercomplaint by that date, the case will proceed based on the remaining counterclaims, and the Court will consider Plaintiff's anti-SLAPP arguments.

As discussed at the hearing, Plaintiff shall serve the unserved defendants on or before **April 3, 2026**. The Court sets an initial case management conference for May 6, 2026 at 2:00 p.m. via Zoom video. A joint case management conference is due one week in advance.

Finally, as Plaintiff is proceeding without counsel, the Court directs his attention to the Handbook for Pro Se Litigants, which is available along with further information for the parties on the Court's website located at http://cand.uscourts.gov/proselitigants. Plaintiff may also contact the Legal Help Center via telephone: (415)-782-8982, or email: fedpro@sfbar.org for free assistance regarding his claims.

18

This Order disposes of Docket Nos. 15 and 23.

**IT IS SO ORDERED.**

Dated: March 30, 2026

_____
JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California

19