United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AMEER ALGHUSAIN,
Plaintiff,

v.

CALTRAIN, et al.,
Defendants.

Case No. 25-cv-09670-JSC

**ORDER RE: DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND PLAINTIFF'S MOTION TO STRIKE OR DISMISS USRS DEFENDANTS' COUNTERCLAIMS**

Re: Dkt. Nos. 63, 71

Plaintiff, proceeding without attorney representation, sues Caltrain, US Rail Systems Inc. ("USRS"), United States High Speed Rail Association Inc. ("USHSRA"), Sound Transit, Herzog Inc. ("Herzog"), Scott Richards, Phil Gilmour, John Hogan, James Harrison, and Robert Pearsall for violations of trademark and other federal and state laws. (Dkt. No. 59.)[1] Mr. Richards and USRS ("USRS Defendants") counterclaim for tortious interference, libel, violations of trademark laws, and unfair competition. (Dkt. No. 10.) Pending before the Court are Defendants' motion to dismiss Plaintiff's amended complaint, (Dkt. No. 63), and Plaintiff's motion to strike and dismiss USRS Defendants' counterclaims, (Dkt. No. 71). Having carefully considered the parties' submissions, and with the benefit of oral argument on August 13, 2026, the Court GRANTS Defendants' motion to dismiss and DENIES Plaintiff's motion to strike or dismiss USRS Defendants' counterclaims.

Specifically, the Court dismisses Plaintiff's claims against Mr. Harrison and Mr. Hogan for

[1] Record citations are to material in the Electronic Case File ("ECF") in Case No. 25-CV-09670-JSC, unless otherwise noted; pinpoint citations are to the ECF-generated page numbers at the top of the documents.

insufficient service of process and Plaintiff's claims against USHSRA and Mr. Pearsall because the Court did not grant leave for Plaintiff to add new defendants. The Court also dismisses Plaintiff's First and Second Causes of Action because the Court did not grant leave for Plaintiff to file these amended or new claims, and Plaintiff's Fourth Cause of Action because Plaintiff has not plausibly alleged any constitutional violation. Having dismissed Plaintiff's federal law claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

The Court denies Plaintiff's motion to strike or dismiss USRS Defendants' counterclaims because Plaintiff has not shown the counterclaims violate California's anti-SLAPP statutes or that he is entitled to judgment on the pleadings.

## BACKGROUND

### I. COMPLAINT ALLEGATIONS

"Plaintiff has been engaged in the railroad and transit industry since at least 2002," and "has continuously used in commerce a family of trademarks, including US RAIL™, US RAILWAYS™, UNITED RAILWAYS™, UNITED STATES RAIL™, UNITED STATES RAILWAYS™, AMERICAN RAIL™, and AMERICAN RAILWAYS™." (Dkt. No. 59 ¶¶ 5, 22.)

Around June 2023, Mr. Richards "actively and continuously solicited Plaintiff to provide services to Balfour Beatty Infrastructure Inc. [('Balfour')] and United ECM ('United') as a senior electrical engineering consultant in connection with the Caltrain electrification project." (*Id.* ¶ 30.) "In that capacity, Plaintiff reviewed and evaluated technical submittals, engineering designs, and related materials prepared by [Balfour] and other project participants." (*Id.*) Plaintiff also "worked in coordination with" Mr. Richards, to whom he disclosed "certain confidential and proprietary information, including Plaintiff's trademarks, technical knowledge, engineering materials, and related work product, solely for purposes of the engagement." (*Id.* ¶ 31.) However, in August 2023, Mr. Richards and [Balfour] terminated Plaintiff's engagement "after Plaintiff refused to approve or endorse certain safety-critical engineering documents without adequate review and verification." (*Id.* ¶ 32.)

Around July 29, 2024, USRS was formed as a California corporation, with Mr. Richards as

"co-owner and Chief Executive Officer," and Mr. Gilmour as "co-owner and Chief Operating Officer." (*Id.* ¶¶ 7, 10, 11, 39.) USRS and Mr. Richards "knowingly adopted the trademark 'US Rail Systems,' which wholly incorporates Plaintiff's 'US RAIL™.'" (*Id.* ¶ 39.) USRS then "falsely represented that it owned the 'US RAIL' and 'US RAIL SYSTEMS' trademarks" and "used such misrepresentations to secure contracts and business opportunities," including engagements with Caltrain, Herzog, and Sound Transit. (*Id.*; *see also id.* ¶¶ 6, 8, 9 (alleging Caltrain is a "public commuter rail agency," Herzog is a "rail contractor" working on Caltrain with USRS, and Sound Transit is a Washington "public transit agency" working with USRS).)

Beginning in around 2023, Plaintiff sent "multiple cease-and-desist communications" to Mr. Richards, Mr. Gilmour, USRS, Caltrain, Herzog, Mr. Hogan, and Mr. Harrison "asserting Plaintiff's ownership and 2007 priority rights in the marks" and "objecting to Defendants' use of confusingly similar names, marks, and proprietary materials," but "Defendants willfully continued the complained-of conduct." (*Id.* ¶ 43.) In late 2025, "Plaintiff transmitted [similar] cease-and-desist communications to" Sound Transit, Mr. Pearsall, and USHSRA. (*Id.* ¶ 46.)

Mr. Richards, Mr. Gilmour, and other USRS agents also made several false statements about Plaintiff which impacted his prospective relationships. First, between June 2023 and August 2023, Plaintiff "identified Mr. Mountain as a candidate for future employment and communicated directly to" Mr. Richards "his intent to recruit Mr. Mountain following completion" of the Balfour contract. (*Id.* ¶ 35.) But around October 2024, Mr. Richards and his agents "communicated directly with Mr. Mountain and made false and defamatory statements concerning Plaintiff," including that: "(i) Plaintiff was incompetent to perform rail engineering or related work, (ii) Plaintiff did not own the trademarks US RAIL™ and US RAILWAYS™, (iii) Plaintiff did not operate a legitimate company and lacked the ability to sponsor a work visa, and (iv) Plaintiff was a 'criminal' who had trespassed on CALTRAIN property and was sought by law enforcement." (*Id.* ¶ 36.) After these statements, "Mr. Mountain ceased responding to Plaintiff's communications and did not proceed with the anticipated employment relationship." (*Id.* ¶ 37.)

Second, Mr. Richards and other USRS agents made similar statements to MAC Products, Inc. ("MAC") in 2024. (*Id.* ¶ 51.) Although Plaintiff had "maintained a continuous business

relationship" with MAC since 2015, MAC terminated its relationship with Plaintiff following these communications. (*Id.*) Third, between late 2023 and early 2024, Mr. Richards and other USRS agents made similar statements to Mission College, with which Plaintiff was "engaged in ongoing communications and program development" for a "workforce development and apprenticeship initiative in California." (*Id.* ¶ 52.) Following these statements, Mission College "ceased communications with Plaintiff and did not proceed with the anticipated apprenticeship collaboration." (*Id.*) Fourth, in 2024, Mr. Richards and USRS agents made similar statements to Caltrain and Herzog representatives. (*Id.* ¶ 53.) Although from 2023 to 2024, "Plaintiff actively participated in and submitted bids for public procurement opportunities issued by" Caltrain and Herzog and "reasonably expected to be awarded contracts or subcontracting work," Caltrain and Herzog "declined to award contracts or proceed with Plaintiff's bids and instead awarded or directed work to Defendants." (*Id.*) And fifth, around September 2025, Mr. Richards and Mr. Gilmour made similar statements to "engineers and personnel affiliated with Sound Transit and Caltrain." (*Id.* ¶ 45.)

USHSRA "hold[s] itself out as an active entity and [] conduct[s] business activities in California, . . . including the promotion and marketing of high-speed rail initiatives in association with" USRS, and Mr. Pearsall is USHSRA's "Political Director in California." (*Id.* ¶¶ 14, 15.) Between 2023 and 2024, Mr. Pearsall "participated in or facilitated activities that promoted or used confusingly similar branding and representations associated with Plaintiff's marks in the rail and high-speed rail industry, including in connection with outreach to third parties." (*Id.* ¶ 41.) From March 13, 2025 through early July 2025, Plaintiff and USHSRA, through Mr. Pearsall, "were engaged in ongoing discussions and negotiations regarding a prospective commercial relationship." (*Id.* ¶ 50.) However, USHSRA and Mr. Pearsall "suddenly stopped communicating with Plaintiff in July 2025" and thereafter, in coordination with Mr. Richards and Mr. Gilmour, "conducted organized industry outreach, including conferences, sponsorship solicitations, and direct communications with rail vendors and prospective market entrants." (*Id.*) But still, USHSRA and Mr. Pearsall "used designations including 'US Rail' and closely related terminology in connection with the promotion of USRS and affiliated services, and further referenced or

implied association with Plaintiff's established rail technologies and industry work." (*Id.*)

In addition, from 2019 to October 2025, "Plaintiff actively participated in public procurement opportunities with Caltrain and Herzog" which "reasonably could have matured into contracts with an anticipated value exceeding $15 million." (*Id.* ¶ 54.) However, between 2024 and 2025, Mr. Hogan and Mr. Harrison "exercised authority over procurement, contract structuring, and approval processes." (*Id.*) Mr. Hogan "has held management and operational roles in connection with Caltrain" and USRS, "including serving in an executive or consulting capacity for USRS while contemporaneously holding a senior operational role with Caltrain," and Mr. Harrison "has held legal and managerial roles in connection with Caltrain" and USRS, "including serving as General Counsel for Caltrain while also providing legal services to" Mr. Richards and USRS. (*Id.* ¶¶ 12-13.) And around October 2025, Mr. Hogan and Mr. Harrison "knowingly approved and facilitated the classification of certain contracts and procurement actions as 'not federally funded,'" then falsely designated USRS "as the sole-source provider for rail services and represented that USRS was the only qualified entity capable of performing such work." (*Id.* ¶ 54.)

## II. COUNTERCOMPLAINT ALLEGATIONS

Mr. Richards is the president of USRS and previously worked for United on the Balfour electrification project with Caltrain. (Dkt. No. 10 ¶ 6.) In June 2023, United hired Plaintiff as "an electrical engineering consultant on the Project to review technical data in written submittals prepared for other Balfour or United workers for errors and either sign off on the submittals or resubmit to the drafter for revisions." (*Id.* ¶ 7.) "On August 2, 2023, [Plaintiff] went out into the field unbeknownst to United," and when he returned, "a supervisor told him he was not to perform tasks outside of his submittal review without getting approval from a United supervisor." (*Id.* ¶ 8.) However, Plaintiff again went out into the field the next day and "used a confidential access code gained during his prior employment at Caltrain to enter a restricted electrified rail yard," which was "live" and "required proper safety gear and a Caltrain representative to always be with visitors." (*Id.* ¶ 9.) On August 7, 2023, "United terminated its agreement with [Plaintiff] because of his refusal to comply with United's express instructions given the day before to not go into the

United States District Court
Northern District of California

field without authorization, poor judgment, and improper use of confidential information." (*Id.* ¶ 10.)

In July 2024, Mr. Richards "left United," "formed USRS," and "contracted with Caltrain and TASI to work on the Project." (*Id.* ¶¶ 11-13.) But on August 26, 2024, Plaintiff emailed seven Caltrain officials stating:

> Please be advised that defendant Mr. Scott Richards who owns 50% of the shares of United that won this contract has elected to dissolve the company United, he has taken cash from corporate bank accounts and is planning to leave the country after he declares bankruptcy. This contract must be stopped immediately before Tasi or Caltrain get financial harm (sic) and carry on liabilities and fraudulent documents that I produced for United and BBII.

(*Id.* ¶ 14.) Plaintiff also sent LinkedIn messages to Mr. Mountain, a USRS employee, "warning him to stop working on the Project" and have Mr. Richards send him $360,000, otherwise he would sue Mr. Mountain; and telling him Mr. Richards was misusing the name "US Rail" because "it was a trademark of American Railways," which Plaintiff owned. (*Id.* ¶¶ 15-16.) Mr. Mountain resigned from USRS in May 2025, "causing USRS to lose more than $400,000 as he was not replaced on the Project." (*Id.* ¶ 17.)

Plaintiff formed American Railways on January 23, 2025. (*Id.* ¶ 18.) On February 4, 2025, Plaintiff or American Railways "emailed USRS's business Partner, Mac Products, claiming that USRS had fraudulently obtained a $20 million contract with Balfour" using its intellectual property, "including the tradename US Rail" and "demand[ing] that Mac Products refrain from using [its] name US Rail and its intellectual property." (*Id.* ¶ 19.)

On October 15, 2025, Plaintiff sent Mr. Pearsall, "one of USRS's business contacts," a cease-and-desist letter claiming USRS "had 'secured multiple multi-million dollar contracts using the unauthorized mark 'US Rail Systems,'" and Plaintiff intended to bring his ownership of several other trademarks "'to the attention of the courts of proper jurisdiction.'" (*Id.* ¶ 25.) Plaintiff also sent a cease-and-desist email to Sound Transit, "a company with whom USRS has a contract to perform engineering and other consulting services," alleging Sound Transit was "'supporting or enabling' USRS which 'had repeatedly and willfully infringed on the registered and common law trademarks of American Railways LLC'"; "demand[ing] that if Sound Transit

United States District Court
Northern District of California

does not stop using its intellectual property, it will file an action with the Court"; and "request[ing] copies of all contracts between USRS and Sound Transit." (*Id.* ¶¶ 27-29.) "Sound Transit then informed USRS it would not pay a $400,000 invoice while it was investigating [Plaintiff's] allegation," which "caused a serious disruption to USRS's business, including USRS being unable to pay employees[,] having to take out loans to cover its cash shortfall," and employees' "anxiety about their jobs and receiving unwanted contact from [Plaintiff]." (*Id.* ¶ 30.)

On October 29, 2025, Plaintiff "created a LinkedIn page for US Railways claiming it held the trademark for US Rail and 'US Rail Systems,'" and began repeatedly "contact[ing] Alyssa Walker, a new employee at USRS, requesting that they connect on LinkedIn." (*Id.* ¶¶ 31-32.)

Additionally, in November 2025, USRS Defendants notified Plaintiff "they would be filing a Motion for Rule 11 Sanctions against [Plaintiff] for reasserting the dismissed claims." (*Id.* ¶ 36.) "In retaliation, [Plaintiff] forwarded the email that same day to USRS clients, including Caltrain, DART, and Sound Transit, raising a 'Federal Railroad Safety Alert' claiming that [Mr.] Richards 'may be struggling or facing suicidal thoughts,'" and "further 'urge[d] all recipients' to direct [Mr.] Richards to 'employee-assistance programs' or 'suicide-prevention resources' 'for the safety of the public, the workforce, and Mr. Richards himself,' thereby suggesting to USRS's clients and business contacts that Richards was a safety hazard and unfit to perform his work." (*Id.*)

## III. PROCEDURAL HISTORY

### A. Case No. 24-CV-01863-JSC

In March 2024, Plaintiff sued Mr. Richards, USRS, and others without attorney representation. (Case No. 24-CV-01863-JSC, Dkt. No. 1.) Upon retaining counsel, he filed an amended complaint. (Case No. 24-CV-01863-JSC, Dkt. No. 7.) The Court resolved other defendants' motions to dismiss. (Case No. 24-CV-01863-JSC, Dkt. No. 44.)

On April 18, 2025, Plaintiff filed a second amended complaint against Balfour, Peter Webb, Wayne Richardson, Mr. Richards, and USRS. (Case No. 24-CV-01863-JSC, Dkt. No. 74.) The defendants moved to dismiss. (Case No. 24-CV-01863-JSC, Dkt. Nos. 78, 79.) On June 10, 2025, the Court granted the motions to dismiss in part. (Case No. 24-CV-01863-JSC, Dkt. No. 86.) The Court granted Plaintiff leave to file an amended complaint by June 26, 2025 and stated

United States District Court
Northern District of California

the case would otherwise proceed on the remaining claims. (*Id.*) Plaintiff did not file an amended complaint.

**B. Case No. 25-CV-09670-JSC**

On November 10, 2025, Plaintiff filed this suit without attorney representation and asserted 25 causes of action, including:

**(1)** Common law and 15 U.S.C. § 1125(a) trademark infringement (US RAIL™) against Mr. Richards, Mr. Gilmour, Mr. Smith, Mr. Johnson, and USRS;
**(2)** Common law and 15 U.S.C. § 1125(a) trademark infringement (US RAILWAYS™) against Mr. Richards, Mr. Gilmour, Mr. Smith, Mr. Johnson, and USRS;
**(3)** Common law and 15 U.S.C. § 1125(a) trademark infringement (AMERICAN RAIL™) against Mr. Richards, Mr. Gilmour, Mr. Smith, Mr. Johnson, and USRS;
**(4)** Common law and 15 U.S.C. § 1125(a) trademark infringement (AMERICAN RAILWAYS™) against Mr. Richards, Mr. Gilmour, Mr. Smith, Mr. Johnson, and USRS;
**(5)** Willful and malicious trademark infringement (US RAIL™) against Mr. Richards, Mr. Gilmour, Mr. Smith, Mr. Johnson, and USRS, 15 U.S.C. §§ 1114, 1116, 1117(B)-(C), 1125(A);
**(6)** Willful and malicious trademark infringement (US RAILWAYS™) against Mr. Richards, Mr. Gilmour, Mr. Smith, Mr. Johnson, and USRS, 15 U.S.C. §§ 1114, 1116, 1117(B)-(C), 1125(A);
**(7)** Willful and malicious trademark infringement (AMERICAN RAIL™) against Mr. Richards, Mr. Gilmour, Mr. Smith, Mr. Johnson, and USRS, 15 U.S.C. §§ 1114, 1116, 1117(B)-(C), 1125(A);
**(8)** Willful and malicious trademark infringement (AMERICAN RAILWAYS™) against Mr. Richards, Mr. Gilmour, Mr. Smith, Mr. Johnson, and USRS, 15 U.S.C. §§ 1114, 1116, 1117(B)-(C), 1125(A);
**(9)** Fraud on the U.S. Patent and Trademark Office against Mr. Richards, 15 U.S.C. §§ 1051(a)(3)(D), 1119, 1120;
**(10)** Trademark dilution and unfair competition against Caltrain, Sound Transit, Herzog, John Hogan, James Harrison, 15 U.S.C. § 1125(c); Cal. Bus. & Prof. Code § 14247;
**(11)** Misappropriation of intellectual property and trade secrets against Richards, Gilmour, Johnson, Smith, Herzog, Hogan, USRS, Defend Trade Secrets Act, Cal. Civ. Code § 3426;
**(12)** Copyright infringement, public humiliation, and willful misuse of copyrighted material against Mr. Richards, Caltrain, Herzog, Mr. Gilmour, Mr. Johnson, Sound Transit, Mr. Hogan, and James Harrison, 17 U.S.C. §§ 101,106, 501; Cal. Civ. Code § 1708.8;
**(13)** Defamation per se, false light invasion of privacy, and malicious publication of plaintiff's photograph and likeness against Mr. Harrison, Mr. Richards, Mr. Gilmour, Mr. Hogan, Herzog, and Caltrain;
**(14)** Defamation against Mr. Richards, Mr. Harrison, Mr. Gilmour,

Mr. Hogan, Herzog, and Caltrain;

**(15)** False light and online/cyber defamation against Mr. Richards, Mr. Johnson, Mr. Gilmour, Mr. smith, and USRS;

**(16)** Civil rights violations against Mr. Richards, Mr. Gilmour, Mr. Johnson, Mr. Smith, Mr. Harrison, Mr. Hogan, Herzog, USRS, and Caltrain, 42 U.S.C. §§ 1983,1985; Cal. Civ. Code § 52.1;

**(17)** Tortious interference with prospective economic advantage against Mr. Richards, Mr. Gilmour, Mr. Smith, and USRS, Cal. Civ. Code § 1708;

**(18)** Fraud, procurement fraud, and false statements in public contracting against Caltrain, Herzog, Mr. Harrison and Mr. Hogan, 18 U.S.C. § 1001, 41 U.S.C. § 1703, Cal. Bus. & Prof. Code § 17200;

**(19)** Intentional interference with existing contractual relations against Mr. Richards, Mr. Gilmour, Mr. Smith, and USRS, Cal. Civ. Code § 1708;

**(20)** Intentional interference with contractual and prospective business relations against USRS, Mr. Richards, Mr. Gilmour, and Mr. Smith, Cal. Civ. Code § 1708, 15 U.S.C. § 1125(a);

**(21)** Unfair competition, digital deception, and online impersonation against USRS, Mr. Richards, Mr. Gilmour, Mr. Smith, and Mr. Johnson, 15 U.S.C. § 1125(a), Cal. Bus. & Prof. Code § 17200, Cal. Civ. Code § 3294;

**(22)** Intentional interference with contractual relations, misappropriation, and unfair competition against Mr. Richards, Mr. Gilmour, Mr. Hogan, USRS, Herzog, and Caltrain, 15 U.S.C. § 1125(a), Cal. Bus. & Prof. Code § 17200, Cal. Civ. Code §§ 1708, 3294;

**(23)** Trademark dilution, contributory infringement, and unfair competition against Caltrain, Sound Transit, and Herzog, 15 U.S.C. §§ 1125(c), 1125(a); Cal. Bus. & Prof. Code §§ 14247, 17200;

**(24)** Fraudulent misrepresentation, unfair competition, and procurement fraud against USRS, Mr. Richards, Mr. Gilmour, Mr. Smith, and Sound Transit, 15 U.S.C. § 1125(a); Cal. Bus. & Prof. Code §§ 17200, 17500; Cal. Civ. Code § 3294; 41 U.S.C. § 1703; and

**(25)** Intentional interference with contractual relations, misappropriation, and unfair competition against Mr. Richards, Mr. Gilmour, Mr. Hogan, USRS, and Caltrain, 15 U.S.C. § 1125(a); Cal. Bus. & Prof. Code § 17200; Cal. Civ. Code §§ 1708, 3294;

(Dkt. No. 1 at 30-94.) The Court related this case to Case No. 25-CV-01863-JSC. (Dkt. No. 6.) USRS Defendants then moved for sanctions and to dismiss Plaintiff's complaint. (Dkt. Nos. 8, 9.) After Plaintiff filed an amended complaint, USRS Defendants again moved to dismiss. (Dkt. Nos. 20, 33.)

The Court granted Defendants' motion to dismiss. (Dkt. No. 41.) Specifically, the Court dismissed: (A) Causes of Action 1, 3, 4, 5, 7, 8, 11, 21, and 24 "without prejudice, but also without leave to amend, because they involve the same claims asserted in Case No. 24-CV-01863-

JSC"; (B) Causes of Action 14, 15, and 25 "without prejudice, but without leave to amend, to the extent they rely on facts asserted in Case No. 24-CV-01863-JSC"; (C) Causes of Action 2, 6, 9, and 12 "without prejudice, but also without leave to amend, because Plaintiff has conceded he cannot allege the facts necessary to state these claims"; and (D) Causes of Action 13, 14, 15, 16, 17, 19, 20, 22, and 25 "with leave to amend," except that "Plaintiff may not assert claims involving the same facts as those alleged in Case No. 24-CV-01863-JSC." (*Id.* at 26.)

Plaintiff filed an amended complaint asserting ten causes of action, including:

> **(1)** Trademark dilution, trademark infringement, false designation of origin, and unfair competition against Caltrain, USHSRA, Sound Transit, Herzog, Mr. Pearsall, Mr. Gilmour, Mr. Harrison, and John Hogan (15 U.S.C. § 114, 125(A), 125(C); Cal. Bus. & Prof. Code. §§ 14247, 17200);
> **(2)** Misappropriation of trade secrets against Mr. Gilmour, Herzog, and Mr. Hogan (18 U.S.C. § 1836; Cal. Civ. Code § 3426);
> **(3)** Defamation, defamation per se, and false light against Mr. Harrison, Mr. Richards, Mr. Hogan, Mr. Gilmour, USRS, Herzog, and Caltrain;
> **(4)** Violation of civil rights against Caltrain, Herzog, Mr. Harrison, Mr. Hogan, and Mr. Richards (42 U.S.C. § 1983; Cal. Civ. Code § 52.1);
> **(5)** Intentional interference with prospective economic advantage regarding Kieran Mountain against Mr. Richards and USRS;
> **(6)** Unfair competition against Caltrain, Mr. Hogan, And Mr. Harrison (Cal. Bus. & Prof. Code § 17200);
> **(7)** Intentional interference with contractual relations regarding MAC Products against Mr. Richards, Mr. Gilmour, and USRS;
> **(8)** Intentional interference with prospective economic advantage regarding USHSRA and Mr. Pearsall against USRS, Mr. Richards, and Mr. Gilmour (Cal. Civ. Code § 1708; 15 U.S.C. § 1125(A));
> **(9)** Intentional interference with contractual relations and prospective economic advantage regarding the electrified rail apprenticeship against USRS, Mr. Richards, Mr. Gilmour, Mr. Hogan, Herzog, and Caltrain (Cal. Civ. Code § 1708; 15 U.S.C. § 1125(A); Cal. Bus. & Prof. Code § 17200); and
> **(10)** Intentional interference with contractual relations and prospective economic advantage regarding the Herzog contract against Mr. Richards, Mr. Gilmour, Mr. Hogan, USRS, and Caltrain (Cal. Civ. Code § 1708; California Common Law).

(Dkt. No. 59 ¶¶ 72-198.) Plaintiff alleges "in compliance with this Court's prior rulings, the allegations set forth in this Amended Complaint are limited to facts, events, and conduct arising after the Court's June 10, 2025 Order in Case No. 3:24-cv-01863-JSC." (*Id.* ¶ 67.)

USRS Defendants also counterclaimed for (1) intentional interference with contractual



United States District Court
Northern District of California

relations; (2) intentional interference with prospective business relations; (3)-(4) libel; (5) libel per se; (6) false designation of origin, 15 U.S.C. § 1125(a); (7) common law trademark infringement; (8) common law unfair competition; and (9) unfair competition, Cal. Bus. & Prof. Code § 17200. (Dkt. No. 10 at 9-16.) Plaintiff moved to dismiss the counterclaims. (Dkt. No. 23.) The court dismissed USRS Defendants' intentional interference with prospective economic advantage claim "to the extent it relies on Plaintiff's interactions with Ms. Walker and Mr. Pearsall" but otherwise denied Plaintiff's motion. (Dkt. No. 42 at 18.) Because the Court granted USRS Defendants leave to amend, the Court stated it would "consider Plaintiff's anti-SLAPP arguments" if they did not file an amended complaint. (*Id.*) USRS Defendants also moved for a preliminary injunction, which the Court granted. (Dkt. Nos. 15, 42.) After answering USRS Defendants' complaint, (Dkt. No. 60), Plaintiff renewed his motion to strike the countercomplaint pursuant to California's anti-SLAPP statute, and otherwise moved to dismiss the countercomplaint, (Dkt. No. 71).

## DISCUSSION

### I. DEFENDANTS' MOTION TO DISMISS

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must include a "short and plain statement of [each] claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While the Rule 8 pleading standard does not require "detailed factual allegations," "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). On a motion to dismiss, the court "must take all of the factual allegations in the complaint as true." *Id.* However, this presumption does not apply to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* Ultimately, to avoid dismissal, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," in other words, to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (cleaned up). When a plaintiff files a complaint without representation by a lawyer, the Court must "construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (quotation marks and citation omitted).

United States District Court
Northern District of California

### A. Insufficient Service on Mr. Harrison and Mr. Hogan

Pursuant to Federal Rule of Civil Procedure 12(b)(5), a defendant can move to dismiss a complaint for "insufficient service of process." Fed. R. Civ. P. 12(b)(5). "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under [Federal Rule of Civil Procedure] 4." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). Pursuant to Rule 4(e), an individual in the United States may be served by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> (2) doing any of the following:
> (A) delivering a copy of the summons and of the complaint to the individual personally;
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). Rule 4(m) also provides "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.*

Defendants move to dismiss claims against Mr. Harrison and Mr. Hogan for insufficient service of process. As to Mr. Hogan, Defendants contend although Plaintiff attempted service at Caltrain's offices, (Dkt. No. 25), Mr. Hogan is no longer employed by Caltrain, and Plaintiff has not filed proof of Mr. Hogan's service on the docket. Plaintiff responds he "reasonably believed that service . . . was reasonably calculated to provide actual notice of this action" because "Mr. Hogan continued conducting business relating to Caltrain . . . from the same Caltrain headquarters where those entities regularly conducted operations." (Dkt. No. 67 at 32.) However, Mr. Hogan's former place of employment is neither his "dwelling or usual place of abode," *see* Fed. R. Civ. P. 4(e)(2), or his "usual place of business," *see* Cal. Civ. P. Code § 415.20(b); Fed. R. Civ. P. 4(e)(1). So, the Court dismisses without prejudice Plaintiff's claims against Mr. Hogan for insufficient service of process.

As to Mr. Harrison, the proof of service Plaintiff filed on the docket indicates the process server received no answer when attempting to serve him at his purported business address. (Dkt. No. 49.) Plaintiff nevertheless contends the summons and complaint were delivered to Mr. Harrison's "law office," and "[a]s a licensed attorney, Mr. Harrison was uniquely situated to understand the significance of the legal papers and the necessity of responding to them." (Dkt. No. 67 at 32.) But Plaintiff has not shown the address is in fact Mr. Harrison's "usual place of business," *see* Cal. Civ. P. Code § 415.20(b); Fed. R. Civ. P. 4(e)(1), or that Mr. Harrison was ever properly served. So, the Court dismisses without prejudice Plaintiff's claims against Mr. Harrison because Plaintiff has not shown sufficient service of process.

Because Plaintiff sued Mr. Harrison and Mr. Hogan on November 10, 2025 and still had not served them by the March 19, 2026 hearing, the Court extended time for service to April 3, 2026. (Dkt. No. 41 at 27.) Although Plaintiff's opposition brief requests an additional extension of time to serve Mr. Harrison and Mr. Hogan, Plaintiff has not shown good cause for an extension. (Dkt. No. 67 at 32-33.) *See* Fed. R. Civ. P. 4(m) ("[I]f the plaintiff shows good cause for the failure [to serve], the court must extend the time for service for an appropriate period."). So, the Court denies Plaintiff's request for an extension of time.

### B. Addition of USHSRA and Mr. Pearsall as Defendants

The Court's prior order granted Plaintiff leave to file an amended complaint but ordered "Plaintiff may not add any new defendants or claims without obtaining additional leave from Court." (Dkt. No. 41 at 26.) Plaintiff's amended complaint nevertheless added USHSRA and Mr. Pearsall as new defendants without seeking or obtaining leave from the Court. So, the Court grants Defendants' request to strike USHSRA and Mr. Pearsall as defendants. If Plaintiff wishes to assert new claims against USHSRA and Mr. Pearsall, he must file a motion for leave to amend his complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).

### C. Trademark Infringement (First Cause of Action)

Plaintiff's amended First Cause of Action alleges Defendants' infringement of the US RAIL, US RAILWAYS, UNITED RAILWAYS, UNITED STATES RAIL, UNITED STATES RAILWAYS, AMERICAN RAIL, and AMERICAN RAILWAYS trademarks. (Dkt. No. 59 ¶

72.)

But to the extent Plaintiff's First Cause of Action is based on infringement of the US RAIL, US RAILWAYS, AMERICAN RAIL, and AMERICAN RAILWAYS trademarks, the Court previously dismissed these claims without leave to amend. Specifically, the Court dismissed Plaintiff's claims for Defendants' infringement of the US RAIL, AMERICAN RAIL, and AMERICAN RAILWAYS trademarks without leave to amend "because they involve the same claims asserted in Case No. 24-CV-01863-JSC." (Dkt. No. 41 at 10-11, 26.) The Court also dismissed Plaintiff's claims for infringement of the US RAILWAYS trademark without leave to amend because Plaintiff "conceded he cannot allege the facts necessary to state" a claim, but noted "[i]f the facts change, Plaintiff may move for leave to amend." (*Id.* at 16, 26.)

To the extent Plaintiff's First Cause of Action is based on infringement of the UNITED RAILWAYS, UNITED STATES RAIL, and UNITED STATES RAILWAYS trademarks, these are new claims. The Court's prior order granted Plaintiff leave to file an amended complaint but ordered "Plaintiff may not add any new defendants or claims without obtaining additional leave from Court." (*Id.* at 26.) Plaintiff did not obtain leave of Court and so these claims must be dismissed too.

So, the Court dismisses Plaintiff's First Cause of Action for trademark infringement because Plaintiff did not have leave to file these amended claims.

**D. Trade Secret Misappropriation (Second Cause of Action)**

Plaintiff's Second Cause of Action, labelled "Formerly Eleventh Cause of Action," alleges Mr. Gilmour, Herzog, and Mr. Hogan misappropriated his trade secrets. (Dkt. No. 59 ¶¶ 81-90.) But the Court previously dismissed Plaintiff's Eleventh Cause of Action for trade secret misappropriation "without leave to amend, because they involve the same claims asserted in Case No. 24-CV-01863-JSC." (Dkt. No. 41 at 11-12, 26.) So, Plaintiff did not have leave to file his amended trade secret misappropriation claim.

The Court therefore dismisses Plaintiff's Second Cause of Action for trade secret misappropriation.

**E. Civil Rights Violations (Fourth Cause of Action)**

"In order to sustain an action under 42 U.S.C. § 1983, the claimant must show: (1) that the conduct complained of was committed under color of state law, and (2) this conduct deprived the claimant of a constitutional right." *Citizen's Ass'n of Portland v. Int'l Raceways, Inc.*, 833 F.2d 760, 761 (9th Cir. 1987) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). The Court previously dismissed Plaintiff's Civil Rights Violations claim because (1) Plaintiff alleged constitutional violations based exclusively on Defendants' defamation, but Plaintiff had not stated a defamation claim, and (2) Plaintiff did not identify which Defendant violated his constitutional rights. (Dkt. No. 41 at 19-20.) Plaintiff's amended complaint alleges new constitutional violations underlying his 42 U.S.C. § 1983 and Bane Act claims.

**1. Deprivation of Rights to Access Public Transportation and Facilities and to be Free from Arbitrary Governmental Restraint on Movement**

Plaintiff alleges Caltrain, Herzog, Mr. Harrison, Mr. Hogan, and Mr. Richards "subjected [him] to a de facto exclusion from Caltrain facilities," thereby "depriv[ing] Plaintiff of protected liberty interests without due process of law, including (i) the right to access public transportation and public facilities open to the public; and (ii) the right to be free from arbitrary governmental restraint on movement." (Dkt. No. 59 ¶¶ 113-114.) At oral argument, Plaintiff explained he is still allowed to ride Caltrain, and has done so, but this claim arises from the BOLO Defendants issued stating "Be on the lookout for [Plaintiff] (See picture above). If this person is seen at any site, please contact SOC. SOC will need to call Transit PD and Samuel Sanchez immediately." (*Id.* at 31.)

But, even assuming Plaintiff had alleged Defendants barred him from riding Caltrain, Plaintiff does not cite any case identifying a constitutional right to access public transportation and public facilities. And although "[t]he Supreme Court has recognized a fundamental right to interstate travel," *Miller v. Reed*, 176 F.3d 1202, 1205 (9th Cir. 1999) (citing *Attorney General of New York v. Soto-Lopez*, 476 U.S. 898, 903 (1986) (Brennan, J., plurality opinion)), "the Constitution does not guarantee the right to travel by any particular form of transportation." *Gilmore v. Gonzales*, 435 F.3d 1125, 1136 (9th Cir. 2006) (citing *Miller*, 176 F.3d at 1205 ("[B]urdens on a single mode of transportation do not implicate the right to interstate travel.")).

United States District Court
Northern District of California

So, Plaintiff has not plausibly alleged the "de facto exclusion" from the Caltrain facilities as a mode of public transportation is a constitutional violation.

Plaintiff also alleges Defendants violated his "right to be free from arbitrary governmental restraint on movement." (Dkt. No. 59 ¶ 114.) "Citizens have a fundamental right of free movement, 'historically part of the amenities of life as we have known them.'" *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 944 (9th Cir. 1997) (quoting *Papachristou v. City of Jacksonville*, 405 U.S. 156, 164 (1972)). However, governmental restraints on movement are generally considered seizures, and "[t]he Fourth Amendment applies to all seizures of the person." *See United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975) (citations omitted). The Fourth Amendment "requires that the seizure be reasonable," which "depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by [government] officers." *Id.* (citations omitted). But Plaintiff does not allege any facts from which the Court can draw a reasonable inference his de facto exclusion from the Caltrain facilities constitutes an unreasonable seizure in violation of the Fourth Amendment.

So, Plaintiff fails to state a section 1983 claim based on Defendants' de facto excluding him from Caltrain facilities.

**2. Stigmatizing Accusations**

Plaintiff also alleges "Defendants publicly disseminated false and stigmatizing accusations that Plaintiff was a criminal and security threat in connection with a tangible alteration of Plaintiff's legal status—namely, his exclusion from public property and exposure to law enforcement action," "constitut[ing] a stigma-plus deprivation actionable under 42 U.S.C. § 1983." (Dkt. No. 59 ¶ 114.)

"Injury to reputation standing alone does not violate the Due Process Clause of the Fourteenth Amendment." *Wenger v. Monroe*, 282 F.3d 1068, 1074 (9th Cir. 2002) (citation omitted). "Rather, due process protections apply only if a plaintiff is subjected to 'stigma plus; i.e., if the state makes a charge against [a plaintiff] that might seriously damage his standing and associations in the community,' and '1) the accuracy of the charge is contested, 2) there is some public disclosure of the charge, and 3) it is made in connection with the termination of

employment or the alteration of some right or status recognized by state law.'" *Id.* (quoting *Llamas v. Butte Community College Dist.*, 238 F.3d 1123, 1129 (9th Cir. 2001)).

Plaintiff does not allege any facts supporting a reasonable inference Defendants' statements were connected to "the alteration of some right or status recognized by state law." *See id.* To the extent Plaintiff alleges the right at issue is his access to Caltrain facilities, Plaintiff does not point to any state law recognizing that right. And for the reasons explained above, Plaintiff has not plausibly alleged his exclusion from the Caltrain facilities implicates a federal constitutional right.

So, Plaintiff fails to state a section 1983 claim based on Defendants' allegedly stigmatizing accusations.

**3. First Amendment Retaliation**

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quotation marks and citation omitted). A plaintiff must allege an official "acted with a retaliatory motive" to cause a plaintiff's injury, meaning "the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* at 398-99 (explaining retaliatory motive must be "'but-for' cause" of action and injury). A plaintiff must therefore plead the absence of probable cause or non-retaliatory motives for an official's actions. *See Hartman v. Moore*, 547 U.S. 250, 265-66 (2006).

Plaintiff alleges Defendants excluded him from Caltrain facilities and disseminated false and stigmatizing statements "in retaliation for Plaintiff's protected speech and petitioning activity, including Plaintiff's assertion of intellectual property rights and communications with public agencies," and "Plaintiff's protected conduct was a substantial and motivating factor in Defendants' decision to target him." (Dkt. No. 59 ¶ 115.) But although Plaintiff alleges Defendants excluded him and disseminated statements "in retaliation for" his "assertion of intellectual property rights and communications with public agencies," Plaintiff does not plausibly allege Defendants lacked probable cause or acted without non-retaliatory motives. *See Hartman*, 547 U.S. at 265-66. Furthermore, Plaintiff's allegations Defendants acted "in retaliation," and his

United States District Court
Northern District of California

"protected conduct was a substantial and motivating factor in Defendants' decision" are entirely conclusory and therefore insufficient to support a First Amendment retaliation claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

So, Plaintiff fails to state a section 1983 claim based on Defendants' retaliation.

**4. Mr. Harrison's and Mr. Hogan's Qualified Immunity**

The Supreme Court has "repeatedly [] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (citations omitted). However, "[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018) (citation omitted). "At the motion to dismiss stage, 'dismissal is not appropriate unless [courts] can determine, based on the complaint itself, that qualified immunity applies.'" *Polanco v. Diaz*, 76 F.4th 918, 925 (9th Cir. 2023) (quoting *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016)). Specifically, "[d]etermining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." *O'Brien*, 818 F.3d at 936 (quotation marks and citation omitted); *see also Keates*, 883 F.3d at 1235 (explaining courts "consider whether the complaint alleges sufficient facts, taken as true, to support the claim that the officials' conduct violated clearly established constitutional rights of which a reasonable officer would be aware 'in light of the specific context of the case.'" (citation omitted)). "If the operative complaint contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right, then plaintiffs are entitled to go forward with their claims." *Keates*, 883 F.3d at 1235 (quotation marks and citation omitted).

In addition to insufficient service, Defendants move to dismiss Plaintiff's claims against Mr. Harrison and Mr. Hogan because even if Plaintiff plausibly alleged their "de facto exclu[ding]" him from Caltrain facilities, "stigmatizing accusations," or retaliatory statements violated his constitutional rights, those constitutional rights are not clearly established. In

response, Plaintiff responds only he has alleged Mr. Harrison and Mr. Hogan "knowingly participated in unconstitutional conduct, ratified false and harmful publications, and intentionally interfered with Plaintiff's protected rights and business relationships," so "the Court cannot determine as a matter of law that a reasonable official would have believed such conduct to be lawful." (Dkt. No. 67 at 30.) But Plaintiff's opposition brief does not cite any cases—and Plaintiff at oral argument conceded he did know of any case—recognizing the constitutional rights he alleges Defendants violated. And the Court is not aware of any case recognizing the issuance of a BOLO as a constitutional violation.

So, even if Plaintiff had plausibly alleged a constitutional violation, Mr. Harrison and Mr. Hogan would be entitled to qualified immunity.

**5. *Monell* Claim**

Plaintiff also alleges Caltrain and Herzog are "liable under 42 U.S.C. § 1983 because the constitutional violations were carried out pursuant to official policies, customs, or practices, including the use of internal security bulletins and access restrictions without procedural safeguards, and/or were ratified by final policymakers." (Dkt. No. 59 ¶ 116.)

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). To state a *Monell* claim, a plaintiff must first show his constitutional rights were violated by an individual defendant who was a local government employee. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.") For the reasons explained above, Plaintiff has not alleged any individual office violated his constitutional rights, so he fails to state a *Monell* claim.

***

Because Plaintiff has not plausibly alleged any constitutional violation, the Court dismisses his 42 U.S.C. § 1983 claim. *See Citizen's Ass'n of Portland*, 833 F.2d at 761.

The Bane Act, California Civil Code § 52.1, "permits civil actions for interference with rights under the United States or California Constitutions by threat, intimidation, or coercion." *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013) (citations omitted). But "[a]bsent any federal constitutional violation, or any claim of state constitutional violation, there is no basis for a claim of liability under the Bane Act." *Tillotson v. City of San Francisco*, 739 F. App'x 887, 889 (9th Cir. 2018) (citing *Cameron*, 713 F.3d at 1022). So, because Plaintiff does not plausibly allege any constitutional violation, the Court dismisses his Bane Act claim.

As Plaintiff does not allege a section 1983 or a Bane Act claim, the Court dismisses Plaintiff's Fourth Cause of Action.

**F. State Law Claims**

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "In 28 U.S.C. §§ 1331 and 1332(a), Congress granted federal courts jurisdiction over two general types of cases: cases that 'aris[e] under' federal law, § 1331," which is known as "federal-question jurisdiction," and "cases in which the amount in controversy exceeds $ 75,000 and there is diversity of citizenship among the parties, § 1332(a)," which is known as diversity jurisdiction. *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 437-38 (2019). In addition, courts with subject matter jurisdiction may exercise supplemental jurisdiction over related state law claims. *See* 28 U.S.C. § 1367(a). The party who seeks federal jurisdiction "bears the burden of establishing subject matter jurisdiction." *Ashoff v. City of Ukiah*, 130 F.3d 409, 410 (9th Cir. 1997).

Plaintiff alleges the Court has federal question jurisdiction over his federal law claims and supplemental jurisdiction over his state law claims. (Dkt. No. 59 ¶¶ 17-18.) Whether federal question jurisdiction exists "is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citation omitted). To invoke federal question jurisdiction, a complaint must establish "either that (1) federal law creates the cause of action or that (2) plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Williston Basin Interstate Pipeline Co. v. An*

*Exclusive Gas Storage & Easement*, 524 F.3d 1090, 1100 (9th Cir. 2008).

For the reasons explained above, the Court dismisses all of Plaintiff's federal law causes of action. Plaintiff's remaining causes of action, including for defamation, intentional interference with prospective economic advantage or contractual relations, and violating the Unfair Competition Law ("UCL"), are all state law causes of action.

Although Plaintiff's Eighth and Ninth Causes of Action allege Defendants' intentional interference was "wrongful" because it violated 15 U.S.C. § 1125(a), or constituted defamation or unfair competition under California law, Plaintiff's "right to relief" under these causes of action does not "necessarily depend[] on resolution of a substantial question of federal law." (Dkt. No. 59 ¶¶ 163, 176.) *See Williston Basin Interstate Pipeline Co.*, 524 F.3d at 1000; *see also Golden Eagle Land Inv., L.P. v. Rancho Santa Fe Ass'n*, 19 Cal. App. 5th 399, 429-30 (2018) (requiring allegations the acts "be wrongful by some independent legal measure, beyond interference"). "[T]he presence of the federal issue as an element of the state tort is not the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system." *See Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 814 (1986). Furthermore, because Plaintiff could also prove his claim by showing Defendants' interference constituted wrongful defamation or unfair competition, his right to relief does not necessarily depend on resolving the federal question of a 15 U.S.C. § 1125(a) violation. *See Ecker v. Ford Motor Co.*, No. CV-02-06833 SVW (TJLx), 2002 WL 31654558, at *5 (C.D. Cal. Nov. 12, 2002) ("[I]t is possible that Defendants could be found to have violated state law without finding a violation of federal law."); *see also Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 345 (9th Cir. 1996) ("The invocation of Title VII as a basis for establishing an element of a state law cause of action does not confer federal question jurisdiction when the plaintiff also invokes a state constitutional provision or a state statute that can and does serve the same purpose."); *Fardella v. Downey Sav. & Loan Ass'n*, No. 00-4393, 2001 WL 492442, at *3 (N.D. Cal. May 9, 2001) (holding an alleged federal predicate act did not create federal question jurisdiction when a plaintiff could prove the UCL claim without it). So, Plaintiff's Eighth and Ninth Causes of Action do not necessarily depend on resolution of a substantial question of federal law and therefore do not establish federal question jurisdiction.

Plaintiff also has not shown the Court has diversity subject matter jurisdiction because Plaintiff alleges he and several Defendants—including Caltrain, USRS, Mr. Harrison, and Mr. Pearsall—are California citizens. (Dkt. No. 59 ¶¶ 5-7, 13, 15.) *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (explaining diversity jurisdiction requires "complete diversity of citizenship," meaning "the citizenship of each plaintiff is diverse from the citizenship of each defendant").

Because Plaintiff has not plausibly alleged a viable federal claim, the Court declines to exercise supplemental jurisdiction over his state law claims at this time. *See* 28 U.S.C. § 1367(c); *see also Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir.), *supplemented*, 121 F.3d 714 (9th Cir. 1997), *as amended* (Oct. 1, 1997) (explaining state law claims should be dismissed if federal law claims are dismissed before trial).

The Court therefore declines to exercise supplemental jurisdiction of the state law causes of action and dismisses Plaintiff's Third, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Causes of Action.

The Court therefore grants Defendants' motion to dismiss Plaintiff's complaint.

## II. PLAINTIFF'S MOTION TO STRIKE OR DISMISS COUNTERCLAIMS

### A. Motion to Strike Under Anti-SLAPP Statute

California's anti-Strategic Lawsuit Against Public Participation ("anti-SLAPP") statute, Cal. Civ. P. Code § 425.16, responds to "concern about civil actions aimed at private citizens to deter or punish them for exercising their political or legal rights." *Mindys Cosms., Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010) (quotation marks and citation omitted). The statute provides "a party may file a motion to strike a cause of action against it if the complaint 'aris[es] from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.'" *Id.* (quoting Cal. Civ. P. Code § 425.16(b)(1)).

"A court considering a motion to strike under the anti-SLAPP statute must engage in a two-part inquiry." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003). First, Plaintiff must "make an initial prima facie showing that [USRS Defendants'] suit arises from an act [by Plaintiff] in furtherance of [Plaintiff's] rights of petition or free speech." *Id.* (quotation

marks and citation omitted). Second, if Plaintiff makes the required prima facie showing, "the burden shifts to [USRS Defendants] to demonstrate a probability of prevailing on the challenged claims." *Id.* (quotation marks and citation omitted).

So, at the first step, Plaintiff must show USRS Defendants' counterclaims "aris[e] from" Plaintiff's "act . . . in furtherance of [his] rights of petition or free speech under the United States or the California Constitution in connection with a public issue." Cal. Civ. P. Code § 425.16(b)(1). The anti-SLAPP statute defines such an act as including:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law,
> (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law,
> (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or
> (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Civ. P. Code § 425.16(e).

To make his prima facie showing, Plaintiff bears the "burden [] to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." *Bonni v. St. Joseph Health Sys.*, 11 Cal. 5th 995, 1009 (2021) (citation omitted); *see also Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016) ("At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them."). In addition, the counterclaims must actually arise from Plaintiff's acts, rather than be simply "allegations of protected activity that merely provide context, without supporting a claim for recovery." *See Baral*, 1 Cal. 5th at 394.

And, "to prevail on an anti-SLAPP motion, a defendant must do more than identify some speech touching on a matter of public interest." *See Rand Res., LLC v. City of Carson*, 6 Cal. 5th 610, 621 (2019). Instead, section 625.14(e)(4)'s definition of conduct "in connection with a public issue or an issue of public interest" encompasses: (1) "when the statement or conduct

United States District Court
Northern District of California

concerns a person or entity in the public eye"; (2) "when it involves conduct that could directly affect a large number of people beyond the direct participants"; and (3) "when it involves a topic of widespread, public interest." *Id.* (cleaned up); *see also id.* ("[A] matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest, and [] a person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people.").

Plaintiff argues USRS Defendants' counterclaims "satisfy the first prong of California's Anti-SLAPP statute because every alleged cause of action arises directly from Plaintiff's constitutionally protected rights of petition and free speech." (Dkt. No. 71 at 4 (citing Cal. Civ. P. Code § 425.16(e)(1)-(4)).) However, although Plaintiff "bears the burden of identifying all allegations of protected activity," *see Baral*, 1 Cal. 5th at 396, Plaintiff only identifies two allegations which he argues arise from protected activity.

First, Plaintiff cites his November 2025 email to USRS clients raising concerns about Mr. Richards' health and fitness to work. But Plaintiff does not meet his "burden of identifying . . . the claims for relief supported by" these allegations. *See Baral*, 1 Cal. 5th at 396. Plaintiff also does not "show how these acts are protected under a statutorily defined category of protected activity," *Bonni*, 11 Cal. 5th at 1009, beyond asserting all USRS Defendants' claims fall under section 425.16(e). And to the extent Plaintiff seeks to invoke section 425.16(e)(4), Plaintiff's argument his email "was transmitted only to four attorneys representing the affected public agencies [who] were part of ongoing litigations . . . and to Defendant Scott Richards' counsel," (Dkt. No. 71 at 4-5), undermines any argument his email constituted speech on an issue of public interest. *See Rand*, 6 Cal. 5th at 621 ("[T]o prevail on an anti-SLAPP motion, a defendant must do more than identify some speech touching on a matter of public interest."). So, Plaintiff has not met his burden of showing the anti-SLAPP statute applies to USRS Defendants' claims based on Plaintiff's November 2025 email.

Plaintiff also argues his LinkedIn message to Mr. Mountain in October 2024 "constitutes protected activity." (Dkt. No. 71 at 15.) But again, Plaintiff does not meet his "burden of identifying . . . the claims for relief supported by" these allegations, *Baral*, 1 Cal. 5th at 396; or

"show[ing] how these acts are protected under a statutorily defined category of protected activity," *Bonni*, 11 Cal. 5th at 1009. So, Plaintiff has not met his burden of showing the anti-SLAPP statute applies to USRS Defendants' claims based on his message to Mr. Mountain.

Otherwise, Plaintiff asserts "[t]he challenged conduct consists of Plaintiff's assertion and enforcement of trademark rights, cease-and-desist communications, pre-litigation and litigation communications, participation in USPTO proceedings, and communications with governmental agencies concerning railroad safety, regulatory compliance, and matters affecting public transportation." (Dkt. No. 71 at 4.) These assertions are also insufficient, both for the reasons explained above, and because Plaintiff does not even "identify[] [the] allegations of protected activity" he is challenging. *See Baral*, 1 Cal. 5th at 396 ("[T]he moving defendant bears the burden of identifying all allegations of protected activity."). Furthermore, Plaintiff's assertion "California courts have consistently recognized" his activities are "protected activity within the meaning of the Anti-SLAPP statute," is not persuasive because Plaintiff does not cite any support for that proposition. (Dkt. No. 71 at 8.)

So, because Plaintiff has not met his burden of showing any of USRS Defendants' counterclaims arise from activities protected by California's anti-SLAPP statute, the Court denies his motion to strike the countercomplaint.

**1. USRS Defendants' Request for Fees**

Pursuant to the anti-SLAPP statute, "[i]f the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5." Cal. Civ. P. Code § 425.16(c)(1); *see also* Cal. Civ. P. Code § 128.5(b)(2) (defining frivolous as "totally and completely without merit or for the sole purpose of harassing an opposing party"). USRS Defendants argue they are entitled to fees because Plaintiff "identifies no protected activity, seeks to strike a federal cause of action the anti- SLAPP statute cannot reach, relies on records that appear nowhere in Plaintiff's filing, and asks the Court to strike counterclaims it has already sustained on a pleading Plaintiff concedes has not changed." (Dkt. No. 74 at 17.) Because the Court previously deferred ruling on Plaintiff's anti-SLAPP arguments and indicated it would

consider them at a later date, (Dkt. No. 42 at 17-18), the Court will not order fees on the basis those arguments are frivolous.

**B. Motion to Dismiss**

A motion to dismiss under Federal Rule 12(b) "must be made before pleading if a responsive claim is allowed." Fed. R. Civ. P. 12(b). However, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989) (citation omitted). "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a Rule 12(b)(6) motion to dismiss." *Kawasaki Jukogyo Kabushiki Kaisha v. Rorze Corp.*, 782 F. Supp. 3d 836, 850 (N.D. Cal. 2025) (citing *Dworkin v. Hustler Mag., Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)). So, when considering a motion under Federal Rule of Civil Procedure 12(c), the Court "must accept the facts as pled by the nonmovant." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1053 (9th Cir. 2011) (citation omitted).

Because Plaintiff has answered USRS Defendants' countercomplaint, (Dkt. No. 60), Plaintiff cannot move to dismiss the countercomplaint under Rule 12(b). However, the Court grants Plaintiff's alternative request to consider his motion as a motion for judgment on the pleadings under Rule 12(c).

Plaintiff's only argument is that recent USPTO "proceedings substantially undermine [USRS Defendants'] allegations by confirming that Plaintiff possessed an objectively reasonable basis for asserting trademark rights and acquired distinctiveness" in the US RAILWAYS, AMERICAN RAILWAYS, US RAIL, and AMERICAN RAIL trademarks. (Dkt. No. 71 at 3.) To support his argument, Plaintiff requests judicial notice of a "Nonfinal Office Action" letter from the U.S. Patent and Trademark Office regarding AMERICAN RAILWAYS and US RAILWAYS trademark applications. (Dkt. No. 72 at 9-20.) But although "[w]hen considering a motion for judgment on the pleadings, [a] court may consider facts that are contained in materials

of which the court may take judicial notice," *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) (cleaned up), a court "may not take judicial notice of a fact that is 'subject to reasonable dispute,'" *Lee v. City of Los Angeles*, 250 F.3d 688, 689 (9th Cir. 2001) (quoting Fed. R. Evid. 201)). And USRS Defendants dispute Plaintiff owns these trademarks. (Dkt. No. 10 ¶¶ 52, 67, 74, 80.) So, the Court cannot consider the Nonfinal Office Action letter to decide whether Plaintiff owns the disputed trademarks.

The Court therefore denies Plaintiff's motion for judgment on the pleadings.

## III. LEAVE TO AMEND

Given Plaintiff's inability to cite a single case supporting his alleged constitutional violations, Plaintiff's section 1983 claims are dismissed without leave to amend. Plaintiff's trademark infringement and trade secret misappropriation claims are also dismissed because Plaintiff did not obtain leave to file them, but this dismissal is without prejudice. Similarly, Plaintiff's state law claims are dismissed without prejudice because, in light of dismissal of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over them.

However, as the Court explained in its prior order dismissing Plaintiff's initial complaint, (Dkt. No. 41), the claims in this case and the claims in Case No. 24-CV-01863-JSC involve overlapping parties and facts. In fact, it appears Plaintiff filed this separate action so he could proceed pro se on claims his attorney in Case No. 24-CV-01863-JSC did not, at the time, wish to prosecute. But a litigant cannot simultaneously be represented by counsel on some claims and proceed pro se on other related claims. *See* 28 U.S.C. § 1654 ("[P]arties may plead and conduct their own cases personally ***or*** by counsel." (emphasis added)); *see also McCulloch v. Velez*, 364 F.3d 1, 5 (1st Cir. 2004) (holding a civil litigant "has a right to represent himself or to be represented by an attorney, but he cannot have it both ways. There is no right to hybrid representation in the federal courts." (citation omitted)).

There are good reasons for this rule. For example, opposing counsel has an ethical obligation not to communicate with a litigant represented by counsel. *See* California Rule of Professional Conduct 4.2 ("In representing a client, a lawyer shall not communicate directly or indirectly about the subject of the representation with a person the lawyer knows to be represented

by another lawyer in the matter.”). But, if the litigant could simultaneously proceed with representation in one case and pro se on related claims in another case, opposing counsel would have to communicate directly with the pro se litigant about the subject of his representation in the other case. *Cf. Medhealth Nursing, LLC v. Vessigault*, No. C 13-4038 CW, 2014 WL 3706566, at *2 (N.D. Cal. 2014) (explaining the ethics rules do “not preclude the attorney from communicating with an unrepresented or *pro se* litigant”). Or, as another example, if a litigant’s counsel produces certain documents in one case, but the pro se litigant objects to producing identical documents in the related case, the pro se litigant’s objections would be practically ineffective.

As the Court explained in its prior order dismissing Plaintiff’s claims for claim-splitting, Case No. 24-CV-01863-JSC and Case No. 25-CV-09670-JSC arise out of the same transactional nucleus of facts, include claims against several identical parties, and involve similar rights and evidence. (Dkt. No. 41 at 9-15.) In both cases, Plaintiff alleges he owns trademarks including AMERICAN RAIL™, AMERICAN RAILWAYS™, US RAIL™, and USA RAIL™. (*Compare* Dkt. No. 59 ¶ 1, *with* Case No. 24-CV-01863-JSC, Dkt. No. 74 ¶ 101.) Plaintiff also alleges he worked for United and Balfour on the Caltrain electrification project, under Mr. Richards’ supervision, from June 2023 until his termination in August 2023. (*Compare* Dkt. No. 59 ¶¶ 30, 32, *with* Case No. 24-CV-01863-JSC, Dkt. No. 74 ¶¶ 15-18, 42.) In the course of his employment, Plaintiff allegedly disclosed confidential and proprietary information, including trademarks and trade secrets to Mr. Richards. (*Compare* Dkt. No. 59 ¶ 31, *with* Case No. 24-CV-01863-JSC, Dkt. No. 74 ¶¶ 101-102.) Mr. Richards then formed USRS, which represented it owned Plaintiff’s trademarks and used Plaintiff’s information to secure contracts, including with Caltrain and Herzog. (*Compare* Dkt. No. 59 ¶ 39, *with* Case No. 24-CV-01863-JSC, Dkt. No. 74 ¶¶ 102-104.) In addition, Mr. Richards and others also made several defamatory statements to Caltrain, Herzog, and others about Plaintiff, including that he had trespassed on Caltrain property, had committed crimes, and was “incompetent.” (*Compare* Dkt. No. 59 ¶ 45, 51-53, *with* Case No. 24-CV-01863-JSC, Dkt. No. 74 ¶ 166.) So, although in Case No. 24-CV-01863-JSC, Plaintiff asserts claims related to United’s termination of his employment not in this case, and in this case, Plaintiff

asserts claims based on events following from the events at issue in both cases, the two cases ultimately arise out of the same transactional nucleus of fact. And Plaintiff cannot forgo his claims in Case No. 24-CV-01863-JSC, in which he is represented, and then initiate this new case to pursue those same claims as a pro se litigant.

So, as discussed at oral argument, if Plaintiff wishes to pursue any claims dismissed without prejudice in this action, he must file a motion for leave to amend in his original action, Case No. 24-CV-01863-JSC.

**CONCLUSION**

For the reasons stated above, the Court GRANTS Defendants' motion to dismiss Plaintiff's complaint. Specifically, the Court dismisses Mr. Harrison and Mr. Hogan without prejudice because Plaintiff has not shown they were properly served and dismisses USHSRA and Mr. Pearsall because the Court did not grant leave for Plaintiff to file claims against new defendants. The Court also dismisses Plaintiff's First and Second Causes of Action because the Court did not grant leave for Plaintiff to file these amended or new claims. And the Court dismisses Plaintiff's Fourth Cause of Action because Plaintiff has not plausibly alleged Defendants violated his constitutional rights. Having dismissed Plaintiff's federal law claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

The Court also DENIES Plaintiff's motion to strike or dismiss USRS Defendants' counterclaims because Plaintiff has not shown the counterclaims violate California's anti-SLAPP statutes or that he is entitled to judgment on the pleadings.

If Plaintiff wishes to pursue the claims dismissed without prejudice, he must file a motion for leave to amend his complaint in Case No. 24-CV-01863-JSC.

This Order disposes of Docket Nos. 63 and 71.

**IT IS SO ORDERED.**

Dated: August 14, 2026

Jacqueline Scott Corley

JACQUELINE SCOTT CORLEY
United States District Judge